UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 10-21650-CIV-Moreno

CHARLENE I. JOHNSON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendants.

_____/

**Aronson's Response to Royal Caribbean's Motion to Disqualify**

**Introduction**

In ruling on Royal Carribean's Motion to Disqualify, this Court is confronted with two straightforward issues:

**Issue 1: Substantial Relationship under Rule 4-1.9(a):**

A lawyer's representation of a client cannot be materially adverse to that of a previous client in a "substantially related matter." "Substantially related" means either representation in the same transaction or representation attacking the attorney's prior work. Aronson previously represented Royal Caribbean in many negligence cases, but never represented it in the *Johnson* case or any negligence cases involving Johnson herself. Should Royal Carribean's motion for disqualification be denied?

**Issue 2: Risk of Confidential Information Exposure under Rule 4-1.9(b):**

During the course of Aronson's prior representation of Royal Carribean, did he obtain any confidential information that would otherwise be unobtainable by prudent counsel and prejudice Royal Carribean in the defense of the *Johnson* claim?

It is undisputed that Aronson had a past attorney-client relationship with Royal Carribean and

represented it in numerous negligence cases.[1] Nevertheless, neither the law nor ethical obligations generally prohibit an attorney who has handled a certain type of case for a client from later representing an adverse party in an action against that former client. While Royal Carribean argues vehemently that the law is *undisputed* and that this type of adverse representation is prohibited — even to the point of mis-citing a district court *motion* seeking disqualification of an attorney *as a judicial opinion*[2] — in fact the case law will readily confirm that Aronson's representation of Charlene Johnson as a plaintiff in a classic negligence case against Royal Caribbean is *not* substantially related to his prior work as outside-defense counsel for the cruise line, and that Aronson did not become privy to any confidential information otherwise unobtainable but for his past representation which could somehow be used to the detriment of Royal Caribbean in this matter.

## Argument

**Aronson did not represent Royal Caribbean in any "substantially related matter;" nor did his prior representation give him access to confidential information not generally known or discoverable to a prudent attorney; therefore, disqualification is unwarranted.**

Motions for disqualification are "viewed with skepticism because disqualification impinges on a party's right to employ a lawyer of choice, and such motions are often brought for tactical purposes."[3] Furthermore, because disqualification "strikes at the heart" of a client's right

---

[1] Affidavit of Aronson, Dated July 15, 2010. Exhibit "1."

[2] *Lasselett v. Metropolitan*, 2004 WL 2037096 (M.D. Fla. Certificate of Service March 31, 2004)(Case No.: 6:03-cv-1654-Orl-31 KRS), *motion denied* May 27, 2004 (D.E. 42). Motion is attached as exhibit "2." Remarkably, this miss-citation appears in two other virtually identical motions to disqualify directed at Aronson filed by counsel for Royal Carribean. *See Hernandez v. Royal Caribbean, Ltd*, 1:10-cv-21646-PCH (S.D. Fla)(D.E. 18) and *Chambers v. Royal Carribean, Ltd*, Case No. 09-74578, 11th Judicial Circuit, Miami-Dade County. The substance of the order (exhibit "3") denying the motion to disqualify is favorable to Aronson and is discussed later in this memorandum.

[3] *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 157 (Fla. 3d DCA 2005)(internal citations omitted).

to chose their own attorney, it should be used only in "extremely limited circumstances."[4] Examination of Rule 4-1.9(a) and (b) of the Rules Regulating the Florida Bar under the facts of this case will readily reflect that Royal Carribean can not surmount this deliberately onerous threshold. To the contrary, its conclusory claims and ill-defined areas of professed concern do not approach the level of obvious conflict which the case law has mandated in order to justify the removal of a client's chosen counsel.

A.  **"Substantially Related," as used in 4-1.9(a), means representation in the *same* matter or one where the attorney will be required to attack his previous work.**

Under Rule 4-1.9(a), an attorney who has previously represented a client in a "matter" cannot subsequently "represent another person in the same or a substantially related manner in which that person's interests are materially adverse to the interests of a former client unless the former client gives informed consent."[5] A standing qualification to this rule prohibits disqualification of a "lawyer who recurrently handled *a type of problem* for a former client" who then later represents "another client in a wholly *distinct problem of that type* even though the subsequent representation involves a position adverse to the prior client."[6]

The term "substantially related" was redefined — and defined narrowly — by additional commentary added to Rule 4-1.9 in 2006.[7] According to the prevailing Rule, matters are only considered substantially related if they "involve the same transaction or legal dispute, or if the

---

[4]   *Id.*

[5]   R. Regulating Fla. Bar. 4-1.9(a).

[6]   R. Regulating Fla. Bar. 4-1.9 (comments)(emphasis supplied).

[7]   *In re Amendments to the Rules Regulating the Florida Bar*, 933 So. 2d 417, 445 (Fla. 2006).

current matter would involve the attorney attacking work performed for the former client."[8] Yet even under earlier versions of the Rule, the core question was "whether the lawyer was so involved in the *matter* that the subsequent representation can justly be described as *changing of sides in the matter in question*."[9] Therefore, in order for Royal Caribbean to succeed in disqualifying Aronson from the *Johnson* case, it must show that Aronson represented it in essentially the same exact case.

1. ***Aronson's work as outside defense counsel for Royal Carribean is not substantially related to the Johnson case; Rule 4-1.9(a) is not implicated by his representation.***

The crux of Royal Carribean's argument appears to rest on a quantitative analysis as opposed to the qualitative assessment required by the rules; thus , Royal Carribean places undue emphasis on the fact that Aronson was allegedly involved in the defense of approximately 300 claims over the course of a several year period.  As the commentary defines the Rule, and as the cases apply the Rule and commentary, it is not the frequency of cases that matter. Rather, it is the overlap of specific facts that may subject an attorney to disqualification.  To do otherwise would be to disregard the axiom that "disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly."[10] Indeed, such a rationale would effectively exclude the most qualified of attorneys from representing plaintiffs simply because they have mastered a particular branch of the law.[11]

---

[8] R. Regulating Fla. Bar. 4-1.9 (comments).

[9] *Id.*

[10] Health Care and Retirement Corp. of America Inc. v. Bradley, 944 So. 2d 508, 511 (Fla. 4th DCA 2006)(*quoting Singer Island, Ltd. v. Budget Constr. Co.*, 714 So. 2d 651, 652 (Fla. 4th DCA 1998)).

[11] Restatement (Third) of the Law Governing Lawyers §132, comment d(iii).

Royal Carribean's reliance upon pre-commentary cases like *Estate of Jones v. Beverly Health and Rehabilitation Services, Inc.* does not take this distinction into account.[12] Thus, although Royal Carribean notes that it is presently litigating three cases Aronson previously worked on, it has not shown, in either its motion or affidavit, that Aronson *ever* performed work on *this* case while he was defending claims for Royal Carribean.

In *Morgan Stanley v. Solomon* — cited by Royal Caribbean — an attorney billed approximately 1,500 hours during a two year period defending arbitration proceedings and class actions involving individuals who had sued Morgan Stanley over investment losses.[13] The attorney subsequently left his old firm and began representing plaintiffs in securities arbitration matters, including three cases against Morgan Stanley.[14] Morgan Stanley attempted to disqualify their former counsel, and advanced arguments similar to the position advocated here by Royal Caribbean.[15]

Federal District Judge Marra ultimately concluded that the attorney did not run afoul of Rule 4-1.9(a). He specifically noted that the attorney was involved in "the same *type* of cases" (emphasis added) — arbitrations involving investors against Morgan Stanley — but not the *same transactions*.[16] The Court predicated its opinion in part upon the fact that "like negligence cases, each of [the attorney's] cases involve unique facts."[17] Furthermore, in representing his

---

[12]  68 F. Supp. 2d 1304 (N.D. Fla. 1999).

[13]  2009 WL 413519, *1, No. 08-81330 -CIV, (S.D. Fla. February 19, 2009).

[14]  *Id.*

[15]  *Id.*

[16]  *Id.* at 3 – 4.

[17]  *Id.* at 4.

new clients, the attorney was not required to attack his own work.[18] He was simply obligated to advance legal theories that would have been presented by any competent and experienced lawyer.[19]

Judge Marra's opinion relied in part upon *Health Care and Retirement Corp. of America, Inc. v. Bradley*.[20] There, an attorney who formerly represented a nursing home in some sixty negligence cases (billing 2,100 hours) began representing patients in similar negligence cases against his former client.[21] The nursing home moved unsuccessfully to disqualify their former counsel. Florida's Fourth District Court of Appeal noted that the attorney had previously handled a similar "type of problem" for the nursing home – "negligence cases involving patients who suffered from pressure ulcers or falls."[22] Nevertheless, the Court expressed the opinion that the new case involved a "wholly distinct problem of that type." The Court contrasted representation in a general negligence claim with the hypothetical situation that might arise where an attorney represents a manufacturer in a <u>specific</u> product defect case and then subsequently files suit against the former client-manufacturer <u>based upon the same defect in that same product</u>.[23] The Court expressly noted that "each negligence case turns on its own facts" and therefore would not

---

[18]    *Id.*

[19]    *Id.*

[20]    961 So. 2d 1071 (Fla. 4th DCA 2007).

[21]    *Id.* at 1072.

[22]    *Id.* at 1074.

[23]    *Id.* 1074 (*referring to Sears, Roebuck & Company v. Stansburry*, 374 So. 2d 1051(Fla. 5th DCA 1979)(attorney's firm who represented Sears in a defect case in 1969 involving a lawnmower could not then represent a plaintiff in a case *involving the same lawnmower* against Sears.) The Fourth District noted that the representation would have required the attorney to attack his previous work. *See also Contant v. Kawasaki Motors Corp., U.S.A.*, 826 F. Supp. 427 (M.D. Fla. 1993)(attorney who switched sides in subsequent product defect liability case was disqualified).

be substantially related under Rule 4-1.9(a) merely because they were the same *type* of case.[24]

The arguments made by Royal Carribean are quite similar to those made in *Lasslett v. Metropolitan Life Insurance Company*. Met-Life attempted to disqualify an attorney who had previously represented it in "50 - 60 employee benefit/ERISA cases" from later prosecuting a plaintiff's disability benefits case against the Company.[25]

Met-Life's motion is cited as a judicial opinion in Royal Carribean's motion.[26] Indeed, Royal Carribean emphatically declares that "***the court***, relying upon Rule 4-1.6 of the Florida Rules of Professional Conduct, disqualified plaintiff's attorney" and that the court "***held*** that given the plaintiff's attorney's 'extensive access to [the defendants] highly confidential claims handling and litigation procedures, the representation of the [plaintiff] against the [defendant] clearly gives rise to the appearance of impropriety.'"

In reality, these quotes and argument were culled from Met-Life's motion and never appeared in the Court's formal opinion.[27] Instead, Magistrate Judge Baker ruled that the motion should be denied, relying specifically on the commentary to Rule 4-1.9(a) to the effect that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."[28] Magistrate Judge Baker looked

---

[24] *Id.*

[25] Exhibit 3. Undersigned counsel recognize that the order has little precedential value because it is unpublished.

[26] Royal Carribean's Motion to Disqualify, p.8 [D.E. 17]. This citation error is also present in two other motions filed by Royal Carribean in an attempt to disqualify Aronson. *See footnote* 2, *supra*.

[27] *Id.* (emphasis supplied) (*quoting* 2004 WL 2037096), exhibit 2.

[28] Exhibit 3.

favorably upon this almost prophetic quote from *Royal Caribbean Cruises, Ltd. v. Buenaagua* in determining that disqualification was inappropriate:

> RCCL's affidavits merely relate what every lawyer already knows: Jones Act cases are all similar. This is a basic principle of our jurisprudential system. All patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, ***negligence*** and immigration cases, and all cases of any singular type share elements in common. The affidavits were insufficient to require disqualification.[29]

As Aronson notes in his affidavit, the *Johnson* negligence case involves a woman who was injured using an attraction called a Flow Rider while a guest on the cruise liner M/S Oasis of the Sea.[30] Notably, Mr. Aronson left his old firm, and has not been defending Royal Carribean since September of 2009.[31] Yet the maiden voyage of The Oasis of the Sea's did not occur until December 5, 2009 and Johnson was injured on January 31, 2010.[32] Thus, neither Aronson nor his firm ever worked on a case involving the Flow Rider while Aronson was actively defending Royal Caribbean.[33]

Because disqualification under Rule 4-1.9 requires a showing that the attorney essentially switched sides in the same case or will be required to attack his own work in the case against his former client, and because there is no logical way Aronson could have had anything to do with the *Johnson* case, or any unique, particularized knowledge about the case, there is no basis to disqualify him under rule 4-1.9(a). All Royal Caribbean has alleged and argued is that all negligence cases have something in common, nothing more, or that they use some type of

---

[29] *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So. 2d 8, 11 (Fla. 3d DCA 1996)(emphasis supplied).

[30] Affidavit of Aronson, ¶13. Exhibit 1.

[31] Affidavit of Aronson, ¶15. Exhibit 1.

[32] Affidavit of Aronson, ¶13, 14. Exhibit 1.

[33] Affidavit of Aronson, ¶15 – 19. Exhibit 1.

generalized–although unspecified–procedure for defending and resolving theses cases. For the reasons expressed in the cited authority, this type of broad brush statement in an affidavit hardly provides grounds for a determination by this Court to deny the Plaintiff her choice of counsel..

**B.    In fact, Aronson did <u>not</u> have access to information that was not otherwise available to prudent counsel; there is no risk that Royal Caribbean will be prejudiced as a consequence of his previous representation.**

Rule 4-1.9(b) prohibits an attorney who previously represented a client in a matter from using "information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known."[34] Under the rule, once an attorney-client relationship is shown, "an irrefutable presumption arises that confidences were disclosed to that attorney."[35] This presumption, however, does not alone establish a basis for disqualification.[36] The commentary to the Rule establishes that although:

> information acquired by [a] lawyer in the course of representing a client may not subsequently be used by [a] lawyer to the disadvantage of [a] client . . . information . . . that typically would be obtained by any reasonably prudent lawyer who had never represented the former client should be considered generally known and ordinarily would not be disqualifying.[37]

Additionally, in the case of an organizational client such as Royal Caribbean, "general knowledge of the client's policies and practices ordinarily will not preclude subsequent representation; on the other hand, knowledge of *specific facts* gained in a prior representation

---

[34]   R. Regulating Fla. Bar. 4-1.9(b).

[35]   *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519, *5, no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[36]   *JDI Holdings, LLC. v. Jet Management, Inc.*, 2009 WL 3494182, * 1, no. 3:07-cv-242-MCR-EMT (N.D. Fla. October 26, 2009).

[37]   *Id.* (*quoting* R. Regulating Fla. Bar. 4-1.9(comment)).

that are relevant to the matter in question ordinarily will preclude such a representation."[38]

In moving to disqualify Aronson, Royal Carribean complains, via the affidavit of Salvatore A. Faso II, that Aronson was privy to "confidential information" that he would not have been able to obtain but-for his relationship with Royal Caribbean. While that affidavit should be viewed with a good deal of skepticism by the Court, since Mr. Faso was not employed by Royal Caribbean during most of Mr. Aronson's tenure as outside counsel, the following list of confidential materials does not include the type of information which would merit disqualification here:

- "privileged files containing attorney-client correspondence."

- "policies, procedures and practices, and confidential and proprietary information."

- "intimate knowledge of Royal Carribean's . . . handling of personal injury and slip and fall claims . . .

- "which experts [it] uses"

- "the process [it] employs to arrange medical care for its passengers"

- "internal and external factors that increase the difficulty of defending such claims"

- "Royal Carribean's internal claims handling procedures"

- "Royal Carribean's approach to settlement"

- "Identification of potential deficiencies in [its] case"

- "remedial action suggested by Royal Carribean's inside counsel to Aronson that should take place aboard [its] vessels."[39]

---

[38] R. Regulating Fla. Bar. 4-1.9(comment)(emphasis supplied).

[39] Royal Carribean's Motion to Disqualify, Affidavit of Faso,¶7.

Royal Carribean summarizes this generalized and deliberately non-specific list by concluding that "Aronson was given Royal Carribean's playbook"[40] and that the information in this list is "not information that is generally known . . . and is not the type of information that would be provided to an opposing counsel during discovery."[41]

Arguably, this Court should not need to resort to an affidavit to recognize that the information Royal Carribean is presently labeling as "confidential" and inaccessible really isn't. Indeed, as Aronson remarks in his affidavit, much of this information is readily discoverable and relevant.[42] Some of it is a matter of public record.[43] Aronson is also completely unaware of some of the alleged "confidential information" such as the so-called Royal Carribean litigation "play book,"[44] and has affirmatively stated that this type of information does not exist, to his knowledge. His affidavit in that regard is quite detailed, unlike the generalized, generic collection of materials referenced in the Faso affidavit.

The balance, in fact the vast majority of the materials mentioned in the Faso affidavit, reflect information that any attorney who litigates regularly with Royal Carribean would discover in due course.[45] And has been noted in the cited authority, the mere fact that Aronson may have preexisting knowledge of information that will ultimately be disclosed through discovery — even if it may provide a momentary, initial advantage at the onset of litigation —

---

[40] Royal Carribean's Motion to Disqualify, Affidavit of Faso,¶8.

[41] Royal Carribean's Motion to Disqualify, Affidavit of Faso,¶9.

[42] Affidavit of Aronson,¶¶11(e) and (b). Exhibit 1.

[43] Affidavit of Aronson,¶11(b). Exhibit 1.

[44] Affidavit of Aronson, ¶ 8,(a); 11(c),(d),(e). Exhibit 1.

[45] Affidavit of Aronson, ¶11. Exhibit 1.

does not warrant disqualification.[46] Rather, as has been set forth by the Commentators to the Restatement of the Law Governing Lawyers, the fact that a lawyer may learn a former client's "preferred approach to bargaining in settlement discussions . . . [or] willingness or unwillingness to be deposed by an adversary" does not warrant disqualification absent a showing that "such information would be directly in issue or of unusual value in the subsequent matter." [47]

In *Morgan Stanley & Co. v. Solomon*, Judge Marra held that the attorney's knowledge of " Morgan Stanley's discovery procedures, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley would obtain by virtue of filing suit against Morgan Stanley and conducting discovery."[48] Similarly, the attorney's knowledge of arbitrators likely to be selected by Morgan Stanley was nothing that an competent attorney "examining public information regarding the history of arbitrator awards" could discern.[49] So too, in this instance, and without unduly demeaning the "parade of horribles" set forth in Mr. Faso's affidavit, it is clear that there is nothing in the affidavit to reflect that Jon Aronson gained knowledge of some kind of specialized information while representing Royal Carribean in prior slip and fall cases that will give him some kind of unique tactical advantage in this matter.

A very different scenario was presented in *Tuazon v. Royal Carribean Cruise Lines,*

---

[46] *Kaplan v. Divosta Homes, L.P.*, 20 So. 3d 459,463 (Fla. 2d DCA 2009)(case evaluated under Rules 4-1.7, 4-1.8, and 4-1.9).

[47] Restatement (Third) of the Law Governing Lawyers §132, comment d(iii); *see also Vestron, Inc. v. National Geographic Soc.*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990)(under New York analogue to Rule 4-1.9, mere insight into "litigation thinking", if deemed basis for disqualification, would mandate disqualification in virtually every successive representation situation; motion for disqualification denied)).

[48] 2009 WL 413519,* 6, No. 08-81330 -CIV, (S.D. Fla. February 19, 2009)

[49] *Id.*

*Ltd.*[50] There, an attorney, who formerly worked as claims adjustor for the cruise line, was disqualified from bringing Jones Act cases against the Company.[51] While the Court noted that the mere fact that the attorney used to be a claim adjustor for the cruise line would not normally justify disqualification,[52] in the *Tuazon* matter, the attorney had formerly been employed by the local claims agent for Royal Carribean's insurer, which was still adjusting claims for Royal Carribean, and adjusted claims of that type.[53] Thus, disqualification was considered appropriate.[54] However, in later evaluating *Tuazon* in his decision in *Solomon*, Judge Marra, would note that the attorney in *Tuazon* was effectively a former employee of Royal Carribean, as opposed to outside counsel for the Company, and would naturally have had more knowledge about internal company procedures.[55]

In contrast, Aronson had no access to specific information which would be applicable to the unique facts of this case. To the contrary, as was noted in his affidavit, he has never even worked on a case involving the Flow Rider or Charlene Johnson. He had no unique knowledge that any prudent counsel would be unable to obtain through the regular discovery processes. He was not involved with, nor privy to, any sensitive internal policy discussions at Royal Carribean.

---

[50] 641 So. 2d 417 (Fla. 3d DCA 1994).

[51] *Id.* at 417 - 418.

[52] *Id.* at 418 n1.

[53] *Id.*

[54] *Id.* The attorney in *Tuazon* would find himself disqualified from several other Royal Carribean cases until *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So. 2d 8, 11 (Fla. 3d DCA 1996). By that time, several years had passed since the attorney worked for Royal Caribbean's adjustor. Furthermore, Royal Carribean was using a different adjustor than the one in *Tuazon*.

[55] *Morgan Stanley & Co. Inc. v. Solomon*, 2009 WL 413519, * 6, No. 08-81330-CIV, (S.D. Fla. February 19, 2009)(*citing Tuazon*).

His knowledge is simply the byproduct of years spent working on maritime cases. Therefore, there is no basis to disqualify Aronson and Royal Carribean's motion should be denied.

## Conclusion

Disqualification of counsel is an "extraordinary remedy and should only be resorted to sparingly."[56] Royal Carribean has failed to show that Aronson's former representation was substantially related to the present matter. Furthermore, it has not shown that Aronson is in possession of confidential information, not readily accessible by prudent counsel, that would prejudice it in the defense of the *Johnson* claim. Therefore, this Court should deny Royal Caribbean's motion to disqualify.

## Certificate of Service

WE HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system this 20th day of July, 2010 upon: Randy Ginsberg, Esq., Royal Caribbean Cruises, Ltd., 1050 Caribbean Way, Miami, Florida 33132; James M. Walker, Esq., Walker & O'Neill, P.A., 7301 SW 57th Court, Suite 430, Miami, Florida 33143, Sanford Bohrer, Esq., Holland & Knight, 701 Brickell Ave., Suite 3000, Miami, FL 33131 and Curtis J. Mase, Esq. Mase Lara Eversole, 2601 South Bayshore Drive, Suite 800, Miami, Florida 33133.

Respectfully Submitted,

STEPHENS, LYNN, KLEIN, P.L.
Counsel for Aronson
9130 S. Dadeland Blvd., PH2
Two Datran Center
Miami, FL 33156
305 670 3700
305 670 8592 fax

By: *Robert M. Klein*
Robert M. Klein
Fla. Bar No: 230022

---

[56] *Singer Island Ltd. Inc., v. Budget Const. Co., Inc.*, 714 So. 2d 651, 652 (Fla. 4th DCA 1998).