

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHARLES LASSLETT, II,**

        Plaintiff,

-vs-                                  Case No. 6:03-cv-1654-Orl-28JGG

**METROPOLITAN LIFE INSURANCE COMPANY,**

        Defendant.

## ORDER

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR DISQUALIFICATION OF THE NATION LAW FIRM AND ATTORNEY MARK NATION AS COUNSEL IN THIS MATTER (Doc. No. 19)** |
| **FILED:** | March 31, 2004 |
| **THEREON** it is **ORDERED** that the motion be **DENIED**. | |

Defendant Metropolitan Life Insurance Company ("Met Life") moves to disqualify the law firm and attorney who represent Plaintiff because a lawyer in that firm, Gregory Swartwood, formerly represented Met Life from 1992-2001 (while practicing at several other law firms). Swartwood testified at a hearing before this Court on May 27, 2004 that he represented Met Life in 50-60 employee benefit/ERISA cases, of which approximately 40 were disability cases.



## ANALYSIS

Defendant contends that Plaintiff's counsel should be disqualified because Swartwood previously handled approximately 40 ERISA long-term disability benefits cases involving employer sponsored group plans, and the subject matter of those cases is "substantially related" to the subject matter in this case. Plaintiff contends that the matters are not "substantially related" to Swartwood's previous representation of Met Life.

The Model Rules of Professional Conduct of the American Bar Association, as modified and adopted by the Supreme Court of Florida, govern the professional conduct of its members of the bar in the Middle District of Florida. Local Rule 2.04 (c)) (2004). The Florida Rules of Professional Conduct replaced the Florida Code of Professional Responsibility as of January 1, 1987. See *The Florida Bar Rules Regulating the Fla. Bar*, 494 So.2d 977 (Fla.), *opinion corrected by* 507 So.2d 1355 (Fla. 1986). Although highly persuasive, the decisions of the Supreme Court of Florida are not binding upon the United States District Court for the Middle District of Florida in interpreting the Rules Regulating the Florida Bar because "this court must retain the right to interpret and apply the rules in a federal setting." See *In re Disciplinary Proceedings of John Doe*, 876 F. Supp. 265, 268, n.5 (M.D. Fla. 1993).

Rule 4-1.9 governs disqualification for conflicts with a former client.

Rule 4-1.9 provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 4-1.6 would permit with respect to a client or when the information has become generally known.

-2-

FLORIDA RULES OF PROF'L CONDUCT R. 4-1.9. Disqualification is imputed to all lawyers in a firm. FLORIDA RULES OF PROF'L CONDUCT R. 4-1.10 (a).

In order to prevail in a motion to disqualify under Rule 4-1.9, the movant must establish 1) the existence of a prior attorney-client privilege relationship with the movant; and 2) that the matters in the pending suit are substantially related to the previous matter or cause of action. *See McFartland v. ISI Investment Services, Inc.*, 890 F. Supp. 1029, 1031 (M.D. Fla. 1995) (citing *Cox American Cast Iron Pipe Co.*, 847 F.2d 725, 728) (11th Cir. 1988); *accord, Baybrook Homes v. Banyan Construction & Development, Inc.*, 991 F. Supp. 1440 (M. D. Fla. 1997). Where there is an attorney-client relationship, there is a presumption that confidences have been disclosed between the attorney and the client. *State Farm Mutual Auto Insurance Co. v. K.A.W.*, 575 So.2d 630, 633-34 (Fla. 1991). It is undisputed that Swartwood previously represented Met Life in other ERISA long-term disability actions. The issue is whether the matters in this suit are "substantially related" to the previous matters. The Court finds that they are not.

The Comment to Rule 4-1.9 states in pertinent part:

> The scope of a "matter" for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. ***On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.*** . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

FLORIDA RULES OF PROF'L CONDUCT R. 4-1.9 Comment (emphasis added).

Met Life contends that the defense of the ERISA claims previously defended by Swartwood and the matters in this case are "exactly the same," *i.e.*, long-term disability claims brought by individual claimants. Met Life relied at oral argument on *Contant v. Kawasaki Motors Corp., U.S.A., Inc.*, 826 F. Supp. 427, 429 (M.D. Fla. 1993), in which the court disqualified the plaintiff's attorney in a products liability suit because that attorney had previously represented defendant motorcycle manufacturer defending the crashworthiness and a lack of "crash bars" on a motorcycle manufactured by the same defendant.[1]

The Court does not find that "ERISA claims for long-term disability benefits" is "substantially related" to the matters in this case. Whether different individual plaintiffs, with their own unique impairments or limitations, qualify for disability benefits are not the same subject matter. The fact that the proceedings in ERISA disability cases are similar, or follow a similar pattern, does not make such cases "substantially related." The case cited by Plaintiff, *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So.2d 8 (Fla. 3rd DCA 1996) is on point. In *Royal Caribbean*, the court denied a motion to disqualify the plaintiff-seaman's attorney who four years previously (prior to passing the bar exam) had worked as an adjuster-in-training for insurance claims management firm which was local corresponding agent for cruise line's personal injury insurance carrier, where cases which attorney had access to as adjuster had no substantial relation to cases in which his disqualification was sought and the only similarities the defendant alleged were that all the cases involved seamen's injuries. As the Florida appellate court succinctly put it:

---

[1] *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988), *and Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D.Fla.1992), also cited by Met Life, are inapposite. In *Cox*, the Eleventh Circuit held that counsel was *not* disqualified because defendant had waived any conflict and representation would not create impermissible appearance of impropriety. In *Rentclub*, the court disqualified counterdefendant's attorney in light of evidence that attorney paid opposing party's former employee to disclose confidential matters relating to managerial practices of opposing party.

-4-

> [Defendant's] affidavits merely relate what every lawyer already knows: Jones Act cases are all similar. This is a basic principle of our jurisprudential system. All patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, negligence and immigration cases, and all cases of any singular type share elements in common. The affidavits were insufficient to require disqualification.

*Buenaagua*, 685 So.2d at 11. The Court finds that the matters at issue in this case are not "substantially related" to the ERISA cases that Swartwood previously handled. Defendant's Motion to Disqualify (Doc. No. 19) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 27th day of May, 2004.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

F I L E   C O P Y

Date Printed: 05/28/2004

Notice sent to:

    ____  Mark A. Nation, Esq.
The Nation Law Firm
570 Crown Oak Centre Dr.
Longwood, FL  32750

6:03-cv-01654    hsh

    ____  Ralph C. Losey, Esq.
Akerman Senterfitt
255 S. Orange Ave.
P.O. Box 231
Orlando, FL  32802-0231

6:03-cv-01654    hsh

    ____  Stephanie A. Segalini, Esq.
Akerman Senterfitt
255 S. Orange Ave.
P.O. Box 231
Orlando, FL  32802-0231

6:03-cv-01654    hsh

    ____  John J. Upchurch
Upchurch, Watson, White & Max
900 Winderley Pl., Suite 122
Maitland, FL  32751-2166

6:03-cv-01654    hsh



2004 WL 2037096 (M.D.Fla.)  Page 1

For Dockets See 6:03CV01654

United States District Court, M.D. Florida.
Charles LASSLETT, II, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant.
Case No. 6:03-cv-1654-Orl-31 KRS.
March 31, 2004.

Defendant's Motion for Disqualification of the Nation Law Firm and Attorney Mark Nation as Counsel in this Matter

(With Supporting Memorandum and Local Rule 3.01(g) Certification)

Defendant, Metropolitan Life Insurance Company ("MetLife"), by and through its undersigned attorneys, hereby moves the Court to disqualify Mark Nation and The Nation Law Firm (sometimes hereafter referred to as the "Firm") representing plaintiff in this case as well as any parties adverse to MetLife in employee welfare benefit cases. As grounds for this motion, MetLife states:

1. Mark Nation is the founder of The Nation Law Firm, which limits its practice to the representation of plaintiffs. *See* Affidavit of Stephanie Segalini ("Segalini Aff."), ¶ 2 & Ex. A thereto.

2. Gregory David Swartwood is associated with The Nation Law Firm. *See* Segalini Aff., Ex. B.

3. Prior to becoming associated with The Nation Law Firm, Mr. Swartwood practiced for many years as a defense attorney. Segalini Aff., Ex. B.

4. From 1995 to 2000, Mr. Swartwood and his firm, Unger, Swartwood, Latham and Indest, P.A., were engaged in the representation of MetLife. During these years, Mr. Swartwood defended MetLife in over 100 cases filed by claimants. (Affidavit of Lawrence Wolff ("MetLife Aff."), ¶ 2). Prior to that, Mr. Swartwood was associated with the law firm of Taraska, Grower, Unger and Ketcham, P.A. There, beginning in 1992, he defended MetLife in numerous other cases filed by claimants. MetLife Aff. ¶ 2.

5. The lawsuits in which Mr. Swartwood represented MetLife, as identified above in paragraph 4, primarily involved claims for group employee welfare benefits under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The large majority of these lawsuits involved claims for long-term disability ("LTD") benefits under employer-sponsored group plans.

6. As an attorney for MetLife, Mr. Swartwood was privy to a great deal of confidential, proprietary, and trade secret information concerning MetLife, MetLife's policies and practices for handling disputed claims and MetLife's litigation strategies. MetLife Aff. ¶ 5.

7. Also through his representation of MetLife, Mr. Swartwood was privy to confidential information concerning employer/plan sponsors associated with MetLife. MetLife Aff. ¶ 6.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

8. In the instant case, The Nation Law Firm, and Mark Nation represent Charles Lasslett in his ERISA claim for LTD benefits under the Raytheon Company Employee Group Long Term Disability Plan ("the Plan") sponsored by his former employer, Raytheon Company. This an identical type of claim as those Mr. Swartwood has defended MetLife against on over one hundred prior occasions.

9. Pursuant to the Rules Regulating the Florida Bar, and specifically Chapter 4 of the Rules, it is a conflict of interest for Mr. Swartwood to represent clients in employee welfare benefit actions against MetLife and he, Mark Nation and the Firm should be disqualified from representing clients in that type of action against MetLife. *See* Rules 4-1.9 and 4-1.10 of the Florida Bar Rules.

*MEMORANDUM OF LAW*

I. The Florida Rules of Professional Conduct and Case Precedent Mandate the Disqualification of The Nation Law Firm and its Attorneys

Pursuant to Local Rule 2.4(d), *M.D. Fla.*, attorney conduct is governed by the Rules of Professional Conduct as modified and adopted by the Supreme Court of Florida and contained at Chapter 4 of the Rules Regulating the Florida Bar. *See McPartland v. ISI Investment Servs.*, 890 F.Supp.1029, 1030 (M.D. Fla. 1995). The issue of disqualification of an attorney and/or a law firm is addressed by these Rules.

A. Gregory Swartwood is disqualified from representing clients whose interests are adverse to MetLife

Rule 4-1.9 of the Florida Rules of Professional Conduct addresses conflicts of interest arising from former representation:
A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use of information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

*Rule Regulating Fla. Bar* 4-1.9(a) (1998).[FN1] The attorney will be disqualified from representing the new client upon a showing that: (1) there was an attorney-client relationship, thereby giving rise to an *irrefutable* presumption that confidences were disclosed to the attorney during the course of the relationship; and (2) the current subject matter is the same or substantially related to the matter in which the lawyer represented the former client. *State Farm Mutual Automobile Ins. Co. v. K.A.W.*, 575 So.2d 630, 633 (Fla. 1991) (emphasis added); *see also Metcalf v. Metcalf,* 785 So.2d 747, 749 (Fla. 5th DCA 2001); *McPartland,* 890 F.Supp. at 1031 (citations omitted). To be 'substantially related' "the matters need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *McPartland,* 890 F.Supp. at 1031 (citations omitted); *see also Rentclub, Inc. v. TransAmerica Rental Finance Corp.*, 811 F.Supp. 651, 656 (M.D. Fla. 1992).

> FN1. Rule 4-1.6 addresses confidentiality of information.

The affidavit of Lawrence Wolff on behalf of MetLife clearly shows that for many years there existed an attorney-client relationship between MetLife and Mr. Swartwood, and further that there were indeed confidences disclosed to Swartwood by MetLife during the course of the relationship. Similar to the attorney in *Estate of Jones v. Beverly Health and Rehabilitation Servs.*, 68 F.Supp. 1304, 1309 (N.D.Fla. 1999), Mr. Swartwood "was privy to ... a wealth of information relating to policies, procedures and practices ... which would not have been avail-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

able to him but for the attorney-client privilege." The subject matter in which Mr. Swartwood represented MetLife was in the defense of ERISA benefits claims, including long-term disability benefits claims, presented by individual claimants. Thus, the subject matter of his prior representation of MetLife is not only substantially related to the subject matter of the representation being provided in the present case (as well as other cases currently being handled by The Nation Law Firm against MetLife), but is *exactly the same* subject matter.[FN2] As such, the irrebuttable presumption arises that pertinent confidential information was disclosed to Swartwood. *McPartland,* 890 F.Supp. at 1032; *Estate of Jones,* 68 F.Supp.2d at 1311; *accord State Farm,* 575 So.2d at 633-34.

> FN2. *See, e.g., Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 730 (11th Cir. 1988) (finding matters handled previously by attorney to be substantially related to issues in current litigation because attorney "was exposed" to former client's employment practices while he worked on company matters, helped develop a pre-certification poll at issue in the present case, etc...); *Rentclub,* 811 F.Supp. at 656 (finding the matters substantially related because they involved the same types of issues).

Throughout the course of its relationship with Mr. Swartwood and his former firm, MetLife certainly expected for their internal procedures and litigation strategies to remain confidential and *not* become generally known. MetLife Aff. ¶ 7. Indeed, because life and disability cases, by their very nature, involve confidential medical and other highly personal information about the claimant, it is MetLife's standard practice to place a high priority on confidentiality with respect to all aspects of handling a claimant's claim. MetLife Aff. ¶ 8. Although MetLife does not, at this time, assert that Mr. Swartwood has disclosed these confidences, "[w]henever an attorney seeks to represent an interest adverse to that of the former client, the possibility arises that the attorney, whether intentionally or inadvertently, will reveal to his present client confidential information entrusted to him during his previous representation." *Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 728 (11th Cir. 1988) (quoting *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1027 (5th Cir. Unit B June 1981)[FN3]); *see also Rentclub,* 811 F.Supp. at 656 (explaining that exposure to confidential business information of former client "in itself raises the irrebuttable presumption of breach of confidences stemming from [the new litigation]").

> FN3. Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Given Mr. Swartwood's extensive access to MetLife's highly confidential claims handling and litigation procedures, the representation of claimants against MetLife clearly gives rise to an appearance of impropriety. As such, he must be disqualified from any such cases. *See McPartland,* 890 F.Supp. at 1030-31; *State Farm,* 575 So.2d at 633; *accord Freund v. Butterworth,* 165 F.3d 839, 859 (11th Cir. 1999); *Cox,* 847 F.2d at 729.

### B. The Nation Law Firm and Mark Nation Must Also Be Disqualified

Rule 4-1.10(a) requires disqualification of a law firm when any one of its lawyers practicing alone would be disqualified. *Rule Regulating Fla. Bar* 4-1.10(a) (1998); *Matluck v. Matluck,* 825 So.2d 1071, 1072-73 (Fla. 4th DCA 2002); *McPartland,* 890 F.Supp. at 1032. This disqualification applies even when the conflict is a result of a lawyer newly associated with the firm:
When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had ac-

2004 WL 2037096 (M.D.Fla.) Page 4

quired information protected by Rules 4-1.6 and 4-1.9(b) that is material to the matter.

*Rule Regulating Fla. Bar* 4-1.10(b) (1998). In applying this rule, the Florida Supreme Court has instructed that "a lawyer's ethical obligations to former clients generally require the disqualification of the lawyer's entire firm where *any* potential for conflict arises." *Castro v. State*, 597 So.2d 259, 260 (Fla. 1992) (emphasis added); *McPartland*, 890 F.Supp. at 1032.

The rationale for disqualifying an entire firm is only partly due to the former client's right to preserve the confidentiality of the information disclosed to the attorney. As explained by the Eleventh Circuit Court of Appeals, the rule also serves "to preserve the public's confidence in the judicial system and the legal profession." *Cox*, 847 F.2d at 729; *see also McPartland*, 890 F.Supp. at 1032 ("It is this Court's duty to not only dispense justices, but, equally as important, to maintain the integrity of the judicial system."). The importance of the rule was emphasized by the Florida Supreme Court in *State Farm:* "Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *State Farm*, 575 So.2d at 632 (citations omitted).

Although Mark Nation is the attorney of record in the present matter, The Nation Law Firm holds Mr. Swartwood out to be the firm's key -- and indeed *only* -- attorney whose practice focuses on "the representation of ... those individuals whose claims for ...life, health, [or] disability ... benefits have been denied." Segalini Aff., Ex. B at 6-7. The firm's website goes on to explain that "[t]his includes actions governed by ... ERISA in which he has extensive experience. His practice also includes the area of bad faith insurance litigation." *Id.* Given the firm's acknowledgment of Swartwood's expertise and contribution to the firm,[FN4] there is clearly a presumption that the firm utilizes Mr. Swartwood's expertise when any of its attorneys have a case in his area of specialty. This gives rise to "an appearance of impropriety" and, as such, "any doubt is to be resolved in favor of disqualification." *McPartland*, 890 F.Supp. at 1032 (quoting *Rentclub*, 811 F.Supp. at 654); *accord State Farm*, 575 So.2d at 634 ("Though we do not dispute ... the good faith of the firm representing plaintiff, both the possibility of conflict of interest and the appearance of it are too strong to ignore.").

> FN4. The Nation Law Firm website acknowledges Mr. Swartwood's experience by identifying a number of companies Mr. Swartood has represented in the past, including MetLife. Segalini Aff., Ex. B, p. 6.

II. The Firm Cannot Rebut the Need for Disqualification

Based on prior communications with Mr. Nation, MetLife expects the Firm to argue that it can prevent the need for disqualification by screening Mr. Swartwood from the cases wherein MetLife is the defendant.[FN5] In addition to being impractical in a firm with only seven attorneys,[FN6] such an argument is misplaced because it overlooks the reason for the rule in the first place -- the courts' collective duty to preserve the public's confidence and trust in the judicial system. As discussed in the previous section, the courts have explained that even an appearance of impropriety may jeopardize that trust. *Cox*, 847 F.2d at 729 (advising that the appearance of impropriety cannot be waived by the parties and the "court must weigh the likelihood of public suspicion against the social interests in obtaining counsel of one's choice"); *accord Castro*, 597 So.2d at 260 ("Our [judicial] system must not only refuse to tolerate impropriety, but even the appearance of impropriety as well."); *McPartland*, 890 F.Supp. at 1032. In addition, the courts in Florida have consistently rejected a firm's attempt to avoid disqualification by "screening" the affected attorney from the rest of the group. *See Birdsall v. Crowngap, LTD.*, 575 So.2d 231 (Fla. 4th DCA 1991) ("Although it is uncontradicted that the lawyer was isolated from the action, we conclude the law firm should have been disqualified... The appearance of justice can be as important as its administration); *Matluck*, 825 So.2d at 1074; *Edward J.DeBartolo Corp. v. Petrin*, 516 So.2d 6 (Fla. 5th DCA

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

1987); *Outdoor Prods. Corp. v. Harpley,* 183 B.R. 645, 650 (Bankr. M.D. Fla. 1995).

> FN5. This practice is also sometimes referred to as putting up a Chinese Wall. *See Edward J.DeBartolo Corp. v. Petrin,* 516 So.2d 6, 7 (Fla. 5th DCA 1987).

> FN6. *See* Segalini Aff. ¶ 4.

In situations such as the one presented here, both the Florida courts as well as the United States District Courts located in Florida have disqualified the entire firm. *See State Farm* (Fla. S.Ct.); *McPartland* (M.D. Fla.); *Matluck* (Fla. 4th DCA); *Birdsall* (Fla. 4th DCA); *Estate of Jones* (N.D. Fla. 1999); *Zarco Supply Co. v. Bonnell,* 658 So.2d 151 (Fla. 1st DCA 1995); *Petrin* (Fla. 5th DCA 1987).

Accordingly, MetLife respectfully requests this Court grant its motion and disqualify The Nation Law Firm and its attorneys from this and future representation of claimants against MetLife.

Charles LASSLETT, II, Plaintiff, v. METROPOLITAN LIFE INSURANCE COMPANY, Defendant.
2004 WL 2037096 (M.D.Fla. ) (Trial Motion, Memorandum and Affidavit )

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.