IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 10-21650-CIV-MORENO/TORRES

CHARLENE I. JOHNSON,

      **Plaintiff,**

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

      **Defendant.**

_____/

## WALKER'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Plaintiff's counsel, **JAMES M. WALKER** and **WALKER & O'NEILL, P.A.**, hereby file this Memorandum in Opposition of Defendant's Motion to Disqualify Plaintiff's Counsel, and as grounds therefore, state as follows:

### INTRODUCTION

Defendant, **ROYAL CARIBBEAN CRUISES, LTD.**, seeks an order from this Court disqualifying Plaintiff's counsel Jonathan B. Aronson, P.A. d/b/a The Aronson Law Firm ("Aronson") and James M. Walker and Walker & O'Neill, P.A. ("Walker"), from representing Plaintiff in this matter.

Defendant's Motion to Disqualify Plaintiff's Counsel [D.E. 17] ("Defendant's Motion") is legally inaccurate and factually insufficient. Defendant's Motion fails to cite the applicable legal standards and relies on outdated case law. The declaration filed in support of the motion is factually inaccurate, but even if it were assumed to be true, it is legally insufficient to warrant disqualification

under the applicable ethical rule. Defendant's Motion is a tactical move to block an experienced trial attorney from becoming involved in this case.

## FACTUAL BACKGROUND

This case involves a passenger aboard Defendant's *M/S Oasis of the Seas* (the "Oasis") who was injured while participating in Defendant's FlowRider surfing activity. Plaintiff fell and hit the rear wall of the FlowRider sustaining a fractured right ankle. Plaintiff required surgery and the insertion of plates and screws to repair her ankle. Plaintiff's complaint alleges the typical theories of negligence: duty, breach, proximate cause and damages.

Plaintiff's injuries occurred on the Oasis while she was taking a surfing lesson on the Defendant's FlowRider. The Oasis is the world's largest cruise ship. It came into service in December of 2009 with much media fanfare. The Oasis represents a new class of cruise ship and is being touted as a technological marvel. In addition to its size and opulence, the Oasis offers a variety of passenger activities never before available on just one ship. The Oasis has two FlowRiders, a rock climbing wall, a zip line, and a high dive with pool. Passengers, such as the Plaintiff, can elect to purchase lessons for some of these activities, such as the FlowRider. They are required to execute an "Onboard Activities Waiver" prior to participating in the activities.

Jonathan Aronson was formerly a member of the firm Rodriguez and Aronson, P.A. which represented Defendant and other cruise lines in passenger and crew member claims. Affidavit of Jonathan Aronson ¶2 ("Aronson Affidavit")[D.E.28-1]. In September of 2009, Aronson left his law firm and ceased representing cruise lines, including Defendant. Aronson Affidavit ¶3-4.

Defendant claims that Aronson should be disqualified from this matter due to Aronson's former firm's representation of Defendant. Defendant further alleges that Aronson had confidential

information which has been imputed to Walker and that Walker should be disqualified as well. Defendant's motion should be denied.

## ARGUMENT

Defendant's Motion badly misrepresents the state of the law regarding motions to disqualify counsel.[1]  In 2006, the Rules of Professional Conduct were amended (the "2006 amendments") changing the landscape of attorney disqualifications in Florida.[2]  While motions for disqualification were always granted sparingly,[3] the amended rules gave a narrower scope to their application. Following the 2006 amendments, Rule 4-1.9 is "not to be broadly applied to require disqualification." Health Care & Ret. Corp. v. Bradley, 961 So. 2d 1071, 1073 (Fla. 4th DCA 2007). "Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice and such motions are often

---

[1] Motions to disqualify in the southern district are governed by the local rules as well as the Florida Rules of Professional Conduct and the ABA's Model Rules of Professional Conduct F.D.I.C. v. Fire Ins. Co., 50 F.3d 1304, 1311-12 (5th Cir. 1995).  In 2006, the Florida Supreme Court adopted (with limited modification), the ABA Model Rules of Professional Conduct. In Re Amendment s to the Rules Regulating the Florida Bar,933 So. 2d 417 (Fla. 2006).

[2] Defendant suggests that this matter is governed by the "appearance of professional impropriety"standard. [D.E. 17, p.3].  This is not, nor has it ever been the applicable standard in Florida.  Baybrook Homes, Inc. v. Banyan Constr. & Dev., Inc., 991 F. Supp. 1440, 1442 (M.D. Fla. 1997)("even if the Court were to adopt the appearance of impropriety standard, . . . disqualification would not be warranted in this case").  As recognized by the court in Morgan Stanley Co. v. Solomon, 2009 WL 413519 *6 (February 19, 2009 S.D. Fla.), "Morgan Stanley also argues that Mr. Solomon can be disqualified based on the appearance of impropriety.  The Court rejects this claim.  Simply put, based on the Court's finding that Mr. Solomon has not violated either subsection of Rule 4-1.9, there is no basis to find the appearance of impropriety."

[3] "[Since] the remedy of disqualification strikes at the heart of one of the most important associational rights it must be employed only in extremely limited circumstance." Coral Reef v. Lloyd's, 911 So. 2d 155, 157 (3rd DCA 2005). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003).

interposed for tactical purposes." Manning v. Cooper, 981 So.2d 668, 670 (4th DCA 2008) citing Alexander v. Tandem Staffing, 881 So. 2d 607, 608-609 (Fla. 4th DCA 2004).

### Amended Rule 4-1.9 of the Rules of Professional Conduct

Defendant's Motion is governed by Rule 4-1.9 of the Rules of Professional Conduct governing former-client conflicts. Rule 4-1.9 and in particular, the comments applicable to the rule were substantially changed by the 2006 amendments. Defendant's Motion lacks candor in failing to point out these substantial amendments. The Defendant further invites error by urging this Court to rely on authority decided under the old rule and applying an inappropriate standard.[4] Rule 4-1.9 articulates two bases to disqualify an attorney litigating against a former client - if the matter is "substantially related' or if the representation would allow the former attorney to use confidential information obtained in the prior representation to the disadvantage of the former client. It provides as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of a former client unless the former gives informed consent; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

R. Reg. Fla. Bar 4-1.9 (2006).

---

[4]Defendant's Motion cites in excess of *twenty (20) cases*, of those cases only <u>one (1) case</u> post-dates the 2006 amendment to the rule. Defendant cites Morgan Stanley & Co. v. Solomon, 2009 WL 413519*6 (S.D. Fla. 2009) [D.E. 17, p.5] without pointing out the amended rule relied upon by the Court to deny disqualification.

**Rule 4-1.9(a) Substantially Related**

Defendant's Motion fails to point out that comments to Rule 4-1.9 (a) create a new and narrow definition of the term "substantially related:"

> Matters are "substantially related" for purposes of this rule if they involve the <u>same transaction or legal dispute</u>, or if the current matter would <u>involve the lawyer attacking work that the lawyer performed for the former client</u> (emphasis added).

Defendant's Motion urges this Court to apply an erroneous definition of "substantially related" matters. [D.E. 17, p. 6].

In narrowly drawing the term "substantially related," Rule 4-1.9 (a) recognizes that over the course of their career, many lawyers will and often do litigate against a former client. This in and of itself is not grounds to disqualify an attorney. Indeed, the comments to the rule expressly envision and permit this practice. "[A] lawyer who recurrently handled a type of problem of a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." In ruling on a motion to disqualify, courts are instructed to focus on whether the adverse representation actually involves the same matter or whether, in fact, it is a new matter simply involving the same general type of litigation. Defendant's Motion fails to discuss <u>any</u> cases applying amended Rule 4-1.9, some of which are squarely on point with this case.[5]

**Substantially Related-Representation on Same Type of Case is Permitted**

In <u>Health Care & Ret. Corp. v. Bradley</u>, 961 So. 2d 1071 (Fla. 4th DCA 2007)[6] the Fourth

---

[5]This oversight is not inadvertent. Undersigned counsel sent copies of the cases citing the amended Rule before Defendant filed its Motion to Disqualify.

[6]<u>Health Care and Retirement v. Bradley</u>, 944 So. 2d 508 (4th DCA 2006)

District Court of Appeal recently addressed a similar situation in which an attorney (Fisher) had recurrently defended a former client in nursing home negligence cases. Health Care sought to disqualify Fisher in a case involving claims for negligent failure to monitor the decedent's "skin integrity," which allowed "pressure ulcers" to develop, and negligent failure to take adequate measures to prevent falls. Id. at 1072. Fisher had previously represented Health Care from February 2001 to December 2004. During that time he billed in excess of 2,100 hours to Health Care in at least sixty cases, including many negligence cases involving "pressure ulcers" and falls. Id. at 1072.

Noting that 'substantially related' is a "narrowly defined concept," the court refused to disqualify Fisher. Id. at 1073. It concluded that Fisher had previously "handled a 'type of problem' for Manor Care" and that the present representation while involving the same type of litigation was "a wholly distinct problem of that type." Id. 1074. The cases were not substantially related under Rule 4-1.9(a) as "each negligence case turns on its own facts." Id. at 1074.

When faced with a similar case, involving an attorney's previous recurrent representation of a client in securities arbitration cases, Judge Mara reached a similar conclusion. Morgan Stanley Co. v. Solomon, 2009 WL 413519 (S.D. Fla.). Morgan Stanley sought to disqualify an attorney (Solomon) who had previously represented the company in arbitrations brought by investors against the company. Solomon brought arbitration claims against Morgan Stanley on behalf of clients. Earlier in his career Solomon had represented Morgan Stanley over a two year period and had billed approximately 1,500 hours. Id. *1. During his tenure, Solomon had conferred with Morgan Stanley brokers, branch office mangers, branch administrative managers and in-house attorneys. Id. *1. He became familiar with Morgan Stanley's system for handling discovery, settlement evaluations, compensation structure and factors considered by in-house counsel in terms of case settlement Id.

*1-2. For a period of time he worked on his firm's database of arbitrators which was used by lawyers in selecting arbitrators in Morgan Stanley arbitrations. Id. *1-2.

Morgan Stanley contended that Solomon's representation of clients in arbitration violated Rule 4.1-9(a) due to:

> (1) Mr. Solomon's use of the same theories of recovery that he defended against as counsel for Morgan Stanley; (2) Mr. Solomon's attack on legal arguments he advanced while working at Greenberg Traurig; (3) the filing of a lawsuit against the Fort Lauderdale branch of Morgan Stanley that he previously represented and (4) the filing of a lawsuit pitting Mr. Solomon against the same in-house counsel with whom he worked while employed at Greenberg Traurig.

Id. *3. The court rejected Morgan Stanley's arguments, concluding that although the cases involved the same types of claims, "like negligence cases, each of Mr. Solomon's cases involve unique facts."

Id. *4.

> Here, the claims are the same type; that is, claims arising in the context of arbitrations brought by investors in securities against Morgan Stanley. Given that the claim is the same type, Morgan Stanley is correct that the same theories of recovery and legal arguments are being used by Mr. Solomon against Morgan Stanley. Likewise, the same individuals, *i.e.* members of Morgan Stanley's Fort Lauderdale branch and in-house counsel, are involved in the current law suits. <u>These facts, however, do not demonstrate that the cases are "substantially related</u>."(emphasis added).

Id. *3.

### Substantially Related - Representation on The Same Type of Case is Not an Attack on Attorney's Own Legal Work

Implicit in the comments to the rule allowing attorneys to former oppose a client in the same types of cases, is the recognition that the attorney will be advancing legal theories opposite to the ones advance on behalf of the former client. As recognized by the Judge Marra in the <u>Morgan Stanley</u> case, this does not rise to the level of attacking the attorney's prior legal work as forbidden by Rule 4-1.9(a) as these theories "would be raised by any competent legal counsel in these types

of arbitrations." Id.*4.

This case is in direct contrast to Sears, Roebuck & Co. v. Stansbury, 374 So. 2d 1051 (Fla. 5th DCA 1979), which although decided before the 2006 amendments is instructive. Health Care & Ret. Corp. v. Bradley, 961 So. 2d 1071, 1073 (Fla. 4th DCA 2007)("The holding of Stansbury would be the same under the 2006 Comment to Rule 4-1.9"). In Stansbury, the lawyer sued Sears, his former client and the manufacturer and seller of a lawnmower, alleging the same defect, in the same lawnmower which he had previously defended on behalf of Sears. The court found that an "obvious" "substantial relationship" existed between the cases, but remanded the case for an evidentiary hearing on the matter. As summarized by the Bradley court, disqualification was required in the Stansbury case because "The second lawnmower suit required the attorney to "attack the work that the lawyer performed for the former clients; the lawsuit sought to establish the defectiveness of the same lawnmower that the lawyer defended from the same attack in the first lawsuit." Bradley, p. 1073. "[I]n Stansbury, the lawyer sued his former client based on the identical facts at issue in the case he defended, i.e. the defective design of a lawnmower." Morgan Stanley,* 4.

### This Case is Not Substantially Related to Prior Aronson Cases and Defendant has Failed to Meet its Burden of Proof

Under Rule 4-1.9(a), the moving party has the burden of proof in showing that the attorney to be disqualified formerly represented the moving party in the same or a substantially related matter. See, e.g., Health Care v. Bradley, 944 So. 2d 508, 512-513 (4th DCA 2006). Defendant failed meet its burden of proof.

This case falls squarely under the holding of the Bradley and Morgan Stanley cases. As sanctioned by the Rule 4-1.9, Aronson seeks to represent a new client against Defendant in a case involving, at best, only the same general type of negligence allegations. Other than being a routine

case of negligence, the present case is completely different from any case previously defended by Aronson. Plaintiff's injuries occurred on the Oasis, a new class of ship, which was brought into commission after Aronson had left his prior law firm and had stopped defending the cruise line. Aronson Affidavit ¶14-15. The injuries occurred while the Plaintiff was participating in a FlowRider surfing lesson. Neither Aronson nor his prior law firm ever defended or had any involvement in a Flowrider case. Aronson Affidavit ¶16-18. Nor did Aronson or his prior law firm ever defend or have any involvement in a case such as this, where the passenger was required to sign a waiver in order to participate in the activity. Aronson Affidavit ¶19. Neither Aronson or his prior law firm ever drafted any such participation waivers for Defendant.

Defendant relies solely on the Declaration of Salvatore A. Faso II ( the "Faso Declaration"). [D.E. 17.1][7] The declaration is given with respect to the period of time from 2000 to 2009. He did not begin working for Defendant until the year February 2008. Aronson Affidavit ¶4. The Faso Declaration is based on a review of company files rather than personal experience. Aronson Affidavit ¶12. The legal sufficiency of Faso's Declaration is questionable.[8]

Paragraph 7(g) of the Faso Declaration alleges that Aronson knew of "remedial actions suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard Royal Caribbean's vessels." Aronson refutes this allegation, and it should be noted that the Oasis was not

---

[7]Inexplicably the Faso Declaration was made under penalty of perjury but was not notarized. Defendant chose not to submit an affidavit from Paul Hehir, its Director of Litigation since 2007.

[8] In Chambers v. RCCL, case no.09-74578 CA 13 in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Defendant filed a similar motion for disqualification. The Faso Declaration submitted in that case was based on personal knowledge. This misrepresentation has been corrected in this case.

even in service at the time Aronson left his prior firm. Aronson Affidavit ¶11 (g), 14-15. It is hard to envision how remedial measures could exist with respect to a new ship still under construction.

### Rule 4-1.9(b) Confidential Information

The second basis for disqualifying an attorney is under subpart (b) of Rule 4-1.9 if the attorney uses confidential information obtained in the representation of a former client to the former client's disadvantage. Comments contained in the 2006 amendments substantially limit the scope of what constitutes disqualifying confidential information. Rule 4-1.9(b) specifically allows attorneys to use generally known information regarding former clients:

> However, the fact that a lawyer has once served a client does not preclude the lawyer form using <u>generally known information</u> about that client when later representing another client. <u>Information that has been widely disseminated by the media</u> to the public, or that typically would be <u>obtained by any reasonably prudent lawyer</u> who had never represented the former client, should be considered generally known and ordinarily will not be disqualifying. The essential question is whether, but for having represented the former client, the lawyer would know or discover the information. Information acquired in a prior representation may have been rendered obsolete by the passage of time. In the case of an organizational client, <u>general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation</u>; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. (emphasis added).

"Generally known information" is broadly defined as information which had been broadly disseminated by the media or which would otherwise be obtained by a reasonably prudent lawyer. General knowledge of a client's policies and practices are included within the definition of "generally known information."

Defendant alleges that Aronson is using knowledge that he gained through his previous representation of Defendant. Faso Declaration ¶7. Paragraph 7 of the declaration identifies seven types of confidential information allegedly known by Aronoson which serve as the basis for his disqualification under Rule 4-1.9(b):

>  a) which experts Royal Caribbean uses; b) the processes that Royal Caribbean employs to arrange for medical care for its passengers; c) internal and external factors that increase the difficulty in defending such claims; d) Royal Caribbean's internal claims handling procedures; e) Royal Caribbean's approach to settlement; f) identification of potential deficiencies in Royal Caribbean's case; and g) remedial actions suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard Royal Caribbean's vessels.

Aronson and Walker vigorously dispute the veracity of Faso Declaration. Aronson Affidavit, ¶8 and 11; Walker Affidavit ¶26 and 42 [D.E. 32]. Even if the facts of the Faso Declaration were taken at face value, the general information described therein is not the type of information that requires disqualification under Rule 4-1.9(b). In fact, the type of information cited by Defendant as disqualifying Aronson is precisely the type of general knowledge permitted under Rule 4-1.9. Faso cites no specific facts. His affidavit contains only general, conclusory allegations.

### General Knowledge of Corporate Policies and Procedures as Opposed to Knowledge of "Specific Facts" Cannot Form a Basis to Disqualify Counsel

In the Morgan Stanley case, the court addressed this very issue. Morgan Stanley argued that the former attorney should be disqualified because his knowledge regarding "compensation issues, broker training programs, internal policies regarding the firing of brokers, defense strategies and techniques, and information about arbitrators." Morgan Stanley *5. The court rejected Morgan Stanley's argument concluding that knowledge of Morgan Stanley's "discovery procedure, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley would obtain by virtue of filing suit against Morgan Stanley and conducting discovery." Id. *6. [9] See also

---

[9] The holding of courts addressing this issue in other jurisdictions is instructive. See Vestron, Inc. v. Nat'l Geographic Soc'y, 750 F. Supp. 586 1595 (S.D.N.Y. 1990) (holding that general understanding of former client's "general litigation thinking" is not basis for disqualification).

Restatement (Third) of Law Governing Lawyers § 132 cmt. d(iii) (2001) (stating that knowledge of a former client's "preferred approach to bargaining in settlement discussions or negotiating business points in a transaction, willingness or unwillingness to be deposed by an adversary, and financial ability to withstand extended litigation or contact negotiations" is relevant to a substantial-relationship assessment "[o]nly when such information will be directly at issue or of unusual value in the subsequent matter").

**Knowledge Obtained by a Prudent Lawyer Cannot Form a Basis to Disqualify Counsel**

Under the comments to Rule 4-1.9 (b), information should be considered generally known if it typically would be obtained by "any reasonably prudent lawyer who had never represented the former client."

Defendant has advanced the novel "play book" theory of disqualification. [D.E. 17, p. 5], Faso Declaration ¶8. Prior to this case neither Aronson, nor Walker, who has litigated against the cruise line for over 10 years, has ever heard of, this supposed "play book." Aronson Affidavit ¶8(a); Walker Affidavit ¶26 and 42. In fact, this play book does not exist. It is nothing more than Defendant's attempts to conflate its general and widely known corporate policies and procedures into "confidential" or "proprietary information."

These policies and procedures have been published in the media[10]; discussed at Congressional hearings;[11] discussed on social media networks and blogs;[12] produced in response to

---

[10] http://www2.cruising.org/industry/medical_facilities.cfm

[11] December 2005-House, March 2006-House, March 2007-House, September 2007-House, June 08-Senate

[12] http://www.cruiselawnews.com/tags/royal-caribbean

discovery requests and court orders;[13] and repeatedly revealed in conversation's with Defendant's own in-house lawyers.[14] Walker Affidavit ¶57. Indeed, the "confidential" information that Defendant advances as proprietary is widely known to the local plaintiff's bar, and in particular to Walker. Walker Affidavit ¶64. No only would prudent lawyers obtain this information, they already have-long ago.

Any information allegedly known by Aronson is precisely the type of information recognized under the Rule 4-1.9(b) as "generally known." The information is <u>both</u> general knowledge of an organizational clients policies and practices <u>and</u> it is widely known.

### **Disqualification of Walker is Not Warrated**

Defendant fails to show that this case is substantially related to Aronson's previous representation of Defendant as required by Rule 4-1.9(a). Defendant fails to show that Aronson possesses confidential information that is not generally know as required by Rule 4-1.9(b). There is no basis to disqualify Aronson, thus there can be no basis to disqualify Walker.

Even if there were a basis to disqualify Aronson, Defendant cites no case law or other authority that requires the disqualification of Walker, who maintains a law firm separate and apart from Aronson. In the case cited by Defendant, <u>Baybrook Homes, Inc. v. Banyan Const. & Development, Inc.</u>, 991 F. Supp. 1440, 1446 (M.D. Fla. 1997), there was no disqualification. This case stands for the proposition that the disqualification of Walker is not warranted under these circumstances. Defendant's attempt to disqualify Walker is strategically motivated.

---

[13]For example, in the <u>Chambers v. Royal Caribbean</u> case in state court where Royal Caribbean is seeking disqualification, the cruise line produced the SQM regarding the crew medical procedures on the cruise ship and ashore.

[14]Walker Affidavit ¶57

**CONCLUSION**

One sentence in Defendant's Motion illustrates the failings of Defendant' entire legal argument. It states:

> Although the specific facts and circumstances of Plaintiff's claims against Royal Caribbean may not be identical to the facts and circumstances in the cases in which Aronson defended Royal Caribbean, all of the cases, including this matter, focused or will focus on Royal Caribbean's policies and procedures related to safety, maintenance, operation and control of its vessels, and the remedial measure Royal Caribbean employs to address hazards on its vessels.

"[D.E. 17, p. 9]. In the first part of the sentence, Defendant admits that this case involves different facts and circumstances, thus avoiding disqualification under the "substantially related" test of Rule 4-1.9(a). In the last part of the sentence Defendant relies on Aronson's knowledge of general "policies and procedures" as a basis for disqualification, when Rule 4-1.9(b) expressly provides that knowledge of an organizational client's policies and practices is not a basis for disqualification.

Defendant's Motion is without merit. Defendant's argument is based on outdated case law decided prior to the 2006 amendments. The vague and conclusory Faso Declaration submitted in support of Defendant's Motion is factually inaccurate and misleading. But even if it were assumed to true, the facts alleged are insufficient under Rule 4-1.9 to require disqualification of Aronson, much less Walker. Defendant's Motion should be denied.

Dated: July 20, 2010                    Respectfully submitted,

Miami, Florida                          /s/ James M. Walker
                                    James M. Walker
                                    Florida Bar No. 755990
                                    WALKER & O'NEILL, P.A.
                                    Attorneys for Plaintiffs
                                    Plaza 57, Suite 430
                                    7301 S.W. 57th Court
                                    South Miami, Florida 33143
                                    Tel. No.    (305) 995-5300

        Facsimile:    (305) 995-5310
        jwalker@cruiselaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 20, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices of Electronic Filing.

        /s/ James M. Walker
        James M. Walker (755990)

**SERVICE LIST**

| | |
|---|---|
| JAMES M. WALKER, ESQ.<br>FBN 755990<br>jwalker@cruiselaw.com<br>Walker & O'Neill, P.A.<br>Suite 430 Plaza 57<br>7301 S.W. 57th Court<br>Miami, FL 33143<br>Tel: (305) 995-5300/Fax: (305) 995-5310<br>*Attorney for Plaintiff*<br><br>JONATHAN B. ARONSON, ESQ.<br>FBN 434116<br>jaronson@aronsonlawfirm.com<br>Aronson Law Firm<br>P.O. Box 565130<br>Miami, FL 33256-5130<br>Tel: (305) 665-8626/Fax: (305) 665-3429<br>*Attorney for Plaintiff*<br><br>ROBERT M. KLEIN, ESQ.<br>FBN 230022<br>kleinr@stephenslynn.com<br>Stephens, Lynn, Klein, P.L.<br>9130 S. Dadeland Blvd., PH II<br>Two Datran Center<br>Miami, Florida 33156<br>Tel.: (305) 670-3700<br>Fax: (305) 670-8592<br>*Attorney for Jonathan B. Aronson, Esq.* | RANDY S. GINSBERG, ESQ.<br>FBN 185485<br>RGinsberg@rccl.com<br>PAUL J. HEHIR, ESQ.<br>FBN 0375410<br>phehir@rccl.com<br>Royal Caribbean Cruises, Ltd.<br>Legal Department<br>1050 Caribbean Way<br>Miami, Florida 33132<br>Tel: (305) 539-6327 or (305) 539-6161<br>Fax: (305) 539-8101<br>*Attorneys for Defendant*<br>*Royal Caribbean Cruises, Ltd.*<br><br>CURTIS J. MASE, ESQ<br>FBN 479083<br>cmase@mletrial.com<br>Mase Lara Eversole, P.A.<br>2601 S. Bayshore Drive, Suite 800<br>Miami, FL 33133<br>Tel: (305) 377-3770/Fax: (305) 377-0080<br>*Attorneys for Defendant*<br>*Royal Caribbean Cruises, Ltd.*<br><br>SANFORD L. BOHRER, ESQ.<br>sbohrer@hklaw.com<br>SCOTT D. Ponce, ESQ.<br>sponce@hklaw.com<br>Holland & Knight<br>701 Brickell Avenue<br>Suite 3000<br>Miami, Florida 33131<br>Tel: (305) 789-7678 or (305) 789-7575<br>Fax: (305) 789-7799<br>*Attorneys for Defendant*<br>*Royal Caribbean Cruises, Ltd.* |