UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 10-21650-CIV-MORENO/TORRES

CHARLENE I. JOHNSON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.
a Liberian Corporation,

    Defendant.
_____/

## FIRST AMENDED MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Defendant, Royal Caribbean Cruises, Ltd. (RCL), hereby files its Amended Motion to Disqualify Plaintiff's Counsel, and in support thereof states:

RCL seeks the disqualification of Plaintiff's counsel, Jonathan Aronson (Aronson) and James Walker (Walker), for the confidential and vast knowledge obtained by Aronson during his prior representation of RCL for close to a decade. During the years 2000 through 2009, Aronson not only defended RCL against hundreds of crewmember and passenger cases, but also counseled it with respect to its most confidential internal risk management and litigation strategy. The knowledge Aronson possesses is special to him because of its breadth, scope, and confidential nature. That information is not generally known among plaintiffs' attorneys and provides Aronson and now Walker with a substantial tactical advantage against RCL. Both Aronson and Walker have acknowledged this advantage, but argue that basic discovery would provide anyone with their knowledge. As is set forth below, however, there is no amount of

discovery that would give any other attorney the same amount of confidential knowledge about RCL possessed by Arsonson and now Walker. For that reason, RCL seeks to disqualify Plaintiff's counsel.

**1. Disqualification of Aronson and Walker is required.**

"Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *See State Farm Mut. Auto. Ins. V. K.A.W.*, 575 So.2d 630, 632 (Fla. 1991). Whether disqualification is appropriate is a fact driven inquiry that is guided by whether a conflict "is such as clearly to call in question the fair or efficient administration of justice,…" *Id*. "[A]ny allegation that an attorney may be in a position of gaining a party's confidential communication and then using those confidences against that same party in subsequent litigation [should be reviewed with] great circumspection." *Adams v. Village of Keesville,* 2008 WL 341367, *6 (N.D.N.Y. 2008). Also, once an attorney-client relationship is shown, an irrefutable presumption arises that confidences were disclosed to the attorney. *See State Farm Mut. Auto. Ins. Co*., 575 So.2d at 633. This presumption "acknowledges the difficulty in proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney." *Id*. at 634.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Id.* at *6 (N.D.N.Y. 2008) (citing *Bd. of Educ. V. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). The issue of disqualification is governed by state law – in this case Florida law. *See, e.g*., *O'Shea v. Epson America, Inc.*, 2010 WL 2305863, *2 (C.D. Ca. 2010). The Florida Rules of

Professional Conduct as established by the Florida Supreme Court govern. Rule 4.1-9, Florida Rules of Professional Conduct, pertaining to conflict of interest as to a former client guides whether Aronson's prior decade's long representation of RCL disqualifies him from suing RCL in this case. The Rule provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; or
>
> (b) *use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known*; or
>
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.
>
> Rule 4-1.9, Florida Rules of Professional Conduct (emphasis added).

"Lawyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyers to the disadvantage of the client without the former client's consent. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce." *See* Rule 4-1.9(b) (cmt). As such, knowledge of specific facts gained in prior representation that are relevant to the matter in question will preclude such representation. *See id.*; *see generally, Largo Concrete v. Liberty Mut. Ins. Co.*, 2008 WL 53128 (N.D. Ca. 2008).

The controlling question is whether the information acquired by the attorney about the former client is "generally known information about that client when later

3

representing another client." *See* Rule 4.1-9(b) (cmt). As such, at issue is whether, but for having represented the former client – in this case RCL – the lawyer would know or discover the information. For instance, and as noted in the affidavits filed in support of this motion, Aronson attended meetings and conducted in-house education along with other defense counsel that involved discussions about privileged information. [*See* Affidavits of Wendy Zepernick at para. 8-10 (Exhibit A); Amy Yarrow at para. 7-10 (Exhibit B)]. Not only does Aronson know about that privileged information, he also knows and provided counsel about RCL's litigation strategies for protecting that confidential information against discovery. Therefore, by definition, the Rule is violated by his representation of Plaintiff in this lawsuit against RCL.

Additionally, the comment to the rule explains that "[t]he scope of a "matter" for purposes of Rule 4-1.9(a) may depend on the facts of a particular situation or transaction" and that a "lawyer's involvement in a matter can also be a question of degree." It recognizes that a lawyer who has recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type *unless* "the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Aronson's prior representation of RCL is so significant that it renders his representation in this case an effective "changing of sides." The fundamental purpose of Rule 4.1-9 is to avoid the undermining of a client's ability to fully trust counsel and to allow for discussions regarding confidential information. [*See* Affidavit of Wendy Zepernick at para. 9 (Exhibit A)]. Allowing Aronson to represent Plaintiff in this lawsuit against RCL will work to undermine that purpose.

In *Tuazon v. Royal Caribbean Cruises, Ltd.*, 641 So.2d 417 (Fla. 3d DCA 1994), the Third District Court of Appeal affirmed an order disqualifying a former claims adjuster for Royal Caribbean Cruises who later became plaintiff's counsel in a Jones Act lawsuit against it. In that case, the trial court disqualified counsel "on grounds that he had access to confidential information as to substantially similar matters brought by other seamen while previously acting as an adjuster for the cruise line." 641 So.2d at 418. Specifically, the evidence established that the plaintiff's attorney had previously "adjusted, evaluated, investigated and handled claims on behalf of the Defendant, some of which claims were of the type involved in this case." *Id*. n.1. Further, the plaintiff's attorney was "privy to confidential procedures and policies of the Defendant" that placed him at an unfair advantage. *Id*. The Third District held that such evidence "fully justified the trial court's decision." *Id*.; *cf. Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So.2d 8, 9-10 (Fla. 3d DCA 1997) (disqualification not warranted where the evidence failed to establish that opposing counsel had information that would give him an unfair advantage where he left opposing side four years ago).

By comparison, in *Morgan Stanley*, the United States District Court for the Middle District of Florida denied a motion for injunctive relief that sought to disqualify an attorney who "switched sides." Specifically, the attorney who had previously defended Morgan Stanley in securities arbitration cases left and then brought such cases on behalf of plaintiffs against Morgan Stanley. During the time he represented Morgan Stanley, the attorney responded to discovery, ranked arbitrators, conducted research and writing, attended meetings and prepared pre-hearing memoranda for in-house attorneys.

Notably though, the attorney "never discussed [brokers'] training or saw documents relating to [brokers'] compensation." *See id.* at *1.

The court's analysis separately addressed two prongs of rule 4.1-9. With respect to Rule 4.1-9(a), the court found that the matters were not "substantially related" because there was no showing that the attorney had "defended Morgan Stanley against claims either brought by the same individuals, involving the same securities or the same brokers." *Id*. at *4. Thus, the attorney did not possess superior knowledge about his cases that involved a unique set of facts. *See id*. The court distinguished the situation from one where the attorney would be attacking his own legal work. *See id*.

With regard to the second prong, the court found that the attorney's knowledge about Morgan Stanley was generally known and not in violation of Rule 4.1-9(b). The court found no substantial risk that the attorney had confidential information that could be used against Morgan Stanley because of the nature of work he did and because of the passage of several years since the attorney had worked on arbitration matters for Morgan Stanley. *See id*. at *6. The court distinguished *Tuazon*, writing that in that case, the former employee possessed considerably more knowledge than an attorney who had previously represented Royal Caribbean. *See id*. at *6. Thus, the Court found that the attorney did not violate either subsection of Rule 4.1-9 and declined issuing a preliminary injunction. *See id*. at *7.

What *Tuazon* and *Morgan Stanley* teach is that application of Rule 4.1-9 is a fact intensive analysis dependent on the degree and involvement of the attorney's prior representation. As such, disqualification is appropriate and includes situations where the confidential information obtained in a prior representation "would materially advance the

client's position in the subsequent matter." *See* ABA Ann. Mod. Rules of Prof. Con., Rule 1.9 (cmt.). Here, Aronson's extensive prior involvement with RCL and his vast knowledge of RCL's claims adjusting, case evaluation methods, and confidential litigation, defensive, and protective strategies, creates just the type of situation that will materially and unfairly advance Plaintiff's case. That unfair advantage is sufficient reason to disqualify Aronson from representing Plaintiff in this lawsuit against RCL.

### 2. Aronson's knowledge of RCL requires his and Walker's disqualification in this case.

This case is closer if not identical to *Tuazon* and completely unlike *Morgan Stanley*. While he was RCL's counsel for close to ten years, Aronson did more than just prepare some discovery as an associate of a law firm on a couple of cases for a limited time as did the attorney in *Morgan Stanley*. To the contrary, Aronson defended RCL in hundreds of cases and had unfettered daily access to RCL for years and was treated by RCL as if he was an employee of the company. [*See* Affidavit of Salvatore Faso, para. 4, 6 (Exhibit C); Affidavit of Wendy Zepernick at para. 8 (Exhibit A)]. During that time, Aronson had a vendor badge which gave him the same level of access as the adjusters, senior adjuster, and supervisor of crew claims at RCL, including "complete and total access to [RCL's] adjusters' files, which contained confidential information regarding RCL's internal valuation of claims." [*See* Affidavit Wendy Zepernick at para. 8 (Exhibit A); *see also* Affidavit of Stacy Stanley at para. 3 (Exhibit D); Affidavit of Amy Yarrow at para. 5 (Exhibit B), David Banciella at para. 4 (Exhibit E), and Michele Perez at para. 5 (Exhibit F)]. More importantly, Aronson provided extensive advice to the adjusters regarding claims valuation and recommendations for the selection of RCL's in-network physicians. [*See* Affidavit of David Banciella at para. 6 (Exhibit E)]. These adjusters

still use that confidential information to value and handle the claims made against RCL, and have and will use that information to defend against Plaintiff's claims in this case. [*See* Affidavit of Salvatore Faso at para. 9-10 (Exhibit C)].

Further, Aronson provided attorney-client advice on how to handle crew and guest claims. [*See* Affidavit of Wendy Zepernick at para. 10 (Exhibit A)]. That advice included how to value neurologic, orthopedic, and back injuries and how to evaluate those types of injuries. [*See* Affidavits of Michele Perez at para. 6 (Exhibit F); Wendy Zepernick at para. 10 (Exhibit A)]. Aronson also frequently conducted conferences with adjusters regarding defense strategies and lines of questioning in anticipation of depositions. [*See* Affidavit of Wendy Zepernick at para. 6 (Exhibit A)]. These adjusters trusted Aronson as counsel for RCL and spoke liberally to him about RCL's confidential policies and procedures. [*See* Affidavit of Wendy Zepernick at para. 10 (Exhibit A); Affidavit of David Banciella at para. 5 (Exhibit E); Affidavit of Stacy Stanley at para. 4 (Exhibit D)].

Aronson over the course of ten years repeatedly counseled adjusters and gave legal advice regarding the most effective methods of testifying during depositions, including strategy for protecting confidential information. [*See* Affidavit of Salvatore Faso at para. 7 (Exhibit C)]. His work included the investigation of alleged safety issues, internal self-critical analysis of such alleged issues, and internal and external investigations including advice on those done by outside experts. [*See* Affidavit of Amy Yarrow at para. 6-9 (Exhibit B); Affidavit of Wendy Zepernick at para. 2-4 (Exhibit A)]. Aronson also participated in a meeting to discuss strategies concerning such studies and how to coordinate defensive legal strategies. [*See* Affidavit of Amy Yarrow at para. 8-10

(Exhibit B)]. By being privy to these discussions, he learned the strengths and weaknesses of RCL's defensive and protective strategies and will know how to get around such. The information he gained during the course of his representation and during that meeting is confidential and it gives him a tactical advantage in this case. [*See* Affidavit of Salvatore Faso at para. 9-10]. That confidential in-house knowledge and methodology imparted partly by Aronson is still used by RCL's adjusters and there is a substantial risk – if not a certain risk – that such knowledge will be used in this case. That knowledge which is presumptively confidential[1] will undermine RCL's defense and deny it justice in this action.

This is especially true under the facts of this case. This case involves a personal injury action based on a negligence claim that Plaintiff suffered an accident while traveling as a passenger aboard one of RCL's vessels. [DE 1]. Specifically, the complaint alleges that RCL knew or should have known of the dangerous and unsafe condition of a Flo Rider system. Plaintiff is claiming that she broke her ankle when she fell while using such system.

Despite any attorney's intention and best efforts to be ethical, once an attorney has represented a company for close to ten years he necessarily has that information in his mind and it is impossible to be assured that such will be kept separate and not used. That is why there is a Rule requiring disqualification to prevent any type of ethical transgression inadvertent, or otherwise. Here, Aronson and Walker will know the questions to ask and by doing so will attack Aronson's own work and given to RCL's employees during his lengthy relationship with the company. *See Morgan Stanley* at *4.

---

[1] The affidavits submitted in support of this motion refer to matters that are protected by the attorney-client privilege and work-product rules. The information contained in those affidavits is not a waiver of those privileges.

This is unacceptable and prohibited by the Florida Rules Governing Professional Conduct because it is that information that will give Plaintiffs' counsel with an unfair advantage in their litigation strategy in this case.

Further, of greatest concern to RCL is Aronson's knowledge of its inner policy, procedures, and confidential information. Aronson has nearly a decade of knowledge regarding hundreds of cases. That knowledge is sweeping and much greater than piecemeal information that may or may not be discoverable to plaintiffs' attorneys generally. There is no difference between the facts here and the example included in the comment to Rule 4.1-9, which provides that "a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce." See Rule 4.1-9(b) (cmt.). Like the lawyer who has vast all-encompassing knowledge about a businessperson's private information and other affairs, Aronson has all-encompassing knowledge about RCL's risk management, loss prevention, and litigation procedures and policies, databases, attorney-client confidential information relating to over three hundred similar cases, and broad-scope attorney-client information concerning sweeping issues encompassing all aspects of RCL's risk management. This information places him at a tactical advantage not only because of the knowledge itself, but also because he will know how and what to request to try to defeat any protective litigation strategies developed and utilized by RCL. Further, like the businessman who trusted his counsel with information that may or may not be discoverable in his subsequent divorce, but for his attorney-client relationship with RCL, Aronson would not know information that was

imparted in confidence. Simply put, the information he possesses creates the conflict requiring his disqualification in this case.

### 3. Walker must be disqualified due to his association with Aronson.

Walker and Aronson are co-counsel in this case. As to Walker, vicarious disqualification is warranted because of his association with Aronson. *See* Rule 4-1.10(b), Rules Regulating the Florida Bar; *see, e.g., Gaton v. Health Coalition*, 745 So.2d 510 (Fla. 3d DCA 1999). Vicarious disqualification is appropriate once a *prima facie* case for disqualification of the incoming attorney is shown. *See id*. at 511. Once an attorney client relationship is established, however, "there is an irrebuttable presumption the members of the firm have obtained confidential knowledge from the relationship." *Outdoor Products Corp. v. Ducane Industries*, 183 B.R. 645, 648-49 (M.D. Fla. 1995). Further, Florida has rejected the use of corrective measures such as an "ethical wall" to cure the problem. *See id*. at 650. Here, there is an irrebuttable presumption that Walker has obtained confidential knowledge from his association with Aronson. Accordingly, to avoid undermining the administration of justice and the appearance of professional propriety*, see State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d at 633, both Aronson and Walker must be disqualified.

CASE NO.: 10-21650-CIV-MORENO/TORRES

## **CONCLUSION**

For the reasons stated above, Royal Caribbean Cruises, Ltd., respectfully requests that this Court disqualify Plaintiff's counsel, Jonathan Aronson and James Walker, in this case.

## **RULE 7.1 CERTIFICATION**

Counsel for Plaintiff have indicated that they oppose the relief sought in this motion.

>
> Respectfully submitted,
>
> MASE, LARA, EVERSOLE, P.A.
> *Attorneys for Defendant*
> 2601 South Bayshore Drive
> Suite 800
> Miami, Florida 33133
> Telephone No.: (305) 377-3770
> Facsimile No.: (305) 377-0080
>
> By:   /s Valentina M. Tejera
> CURTIS J. MASE
> Florida Bar No. 478083
> VALENTINA M. TEJERA
> Florida Bar No.: 536946

CASE NO.: 10-21650-CIV-MORENO/TORRES

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August, 2010, I filed this document electronically. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Valentina Tejera*
VALENTINA TEJERA

CASE NO.: 10-21650-CIV-MORENO/TORRES

**SERVICE LIST**
**CHARLENE I. JOHNSON v. ROYAL CARIBBEAN CRUISES, LTD.**
**CASE NO.: 10-21650-CIV-MORENO/TORRES**
**SOUTHERN DISTRICT COURT OF FLORIDA**
**MIAMI DIVISION**

James M. Walker, Esq.
*Co-Counsel for Plaintiff*
Walker & O'Neill, P.A.
7301 S.W. 57th Court, Suite 430
South Miami, FL 33143
Telephone: (305) 995-5300
Facsimile: (305) 995-5310
**Email: jwalker@cruiselaw.com**

Jonathan Aronson, Esq.
*Co-Counsel for Plaintiff*
Aronson Law Firm
P.O. Box 565130
Miami, FL 33256
Telephone: (305) 665-8626
Facsimile: (305) 665-3429
**Email: jaronson@aronsonlawfirm.com**

Robert Michael Klein
*Counsel for Movant*
Stephens Lynn Klein. P. L.
9130 S Dadeland Boulevard, Penthouse I & II
Miami, FL 33156
Telephone: (305) 670-3700
Facsimile: (305) 670-8592
**Email: KleinR@stephenslynn.com**

18115/111