IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 10-21650-CIV-Moreno

CHARLENE I. JOHNSON,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.
a Liberian Corporation

     Defendant.

_____/

**Aronson's Response to First Amended Motion to Disqualify**

**Introduction**

     Royal Carribean's Amended Motion to Disqualify Jon Aronson as counsel for Charlene Johnson is nothing more  than a transparent attempt to pigeonhole its prior motion into the facts of *Tuazon v. Royal Caribbean Cruises Lines, Ltd.*[1] There are two principal issues for consideration in evaluating the propriety of Royal Carribean's motion:

     **Issue No. 1: Risk of Confidential Information Exposure under Rule 4-1.9(b):**

     An attorney who becomes privy to confidential information otherwise unobtainable by prudent counsel during the representation of a client is disqualified from engaging in subsequent representation adverse to the former client where such information will prejudice the former client.   Royal Caribbean claims that Aronson had access to claims-handling information regarding the valuation it assigns to crew and passenger claims during his tenure as its outside-defense counsel, in addition to knowing its general litigation strategy, effectively making him the

---

[1]     641 So. 2d 417 (Fla. 3d DCA 1994).

CASE NO. 10-21650-CIV-Moreno

equivalent of a Royal Carribean employee. But, as Aronson noted in his affidavit, the information he did have access to was similar to information which any competent attorney litigating against Royal Carribean would otherwise be able to obtain.

**Issue No. 2: Substantial Relationship Under Rule 4-1.9(a):** A lawyer's representation of a client cannot be materially adverse to that of a   previous client in a substantially-related matter.   "Substantially related" means either representation in the same transaction or representation which will necessarily require the attorney to attack his own prior work product. Although Aronson previously represented Royal Caribbean in many negligence cases, he never represented Royal Caribbean in the *Johnson* case nor any negligence case involving Johnson herself.   Given the circumstances, and the routine nature of the *Johnson* negligence claim, the second question to be addressed by the Court concerns whether Royal Caribbean's motion to disqualify should be denied, given the fact that Mr. Aronson's appearance in this matter will not require him to assault any of his own prior work product or services for Royal Carribean, and the cruise line's inability to articulate any specific "confidences" learned by Mr. Aronson during his representation that would reasonably–let alone necessarily–be called in to play in this case.

Argument:

**Aronson did not represent Royal Caribbean in any substantially related matter; nor did his prior representation give him access to confidential information not generally known or discoverable to a prudent attorney. Disqualification is unwarranted.**

As a prefatory matter, motions for disqualification are viewed with scepticism because disqualification impinges upon a party's right to employ their lawyer of choice, and such

2

CASE NO. 10-21650-CIV-Moreno

motions are often brought for tactical purposes.[2] Furthermore, because disqualification "strikes at the heart" of a client's right to choose their own attorney, it should be used only in extremely limited circumstances. [3]

This matter illustrates a textbook example of the tactical use of a motion for disqualification. In its original motion for disqualification, Royal Caribbean expended considerable effort arguing that the *Johnson* case was "substantially related" — as defined by Rule Regulating the Florida Bar 4-1.9(a) — to previous negligence cases Aronson had handled based solely upon the subject matter of the lawsuits. It has now essentially abandoned this untenable argument.[4] Instead, Royal Caribbean strains it remaining credibility by advancing a tenuous argument which suggests that Aronson's role as an independently retained defense attorney was analogous to a Royal Caribbean claims adjustor because he had "unfettered access" to confidential information which was not generally known or discoverable, violating Rule 4-1.9(b). For the reasons that follow, this Court should deny Royal Caribbean's motion for disqualification.

**A.**    **Aronson did not have access to information that was not otherwise available to prudent counsel; there is no risk that Royal Caribbean will be prejudiced as a consequence of his previous representation.**

---

[2]    *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 157 (Fla. 3d DCA 2005)(internal citations omitted).

[3]    *Id.*

[4]    A vestigial remnant of this argument can be seen in the Affidavit of Faso, where Faso declares that "Aronson represented Royal Carribean in 172 legal claims made by . . . guests against Royal Carribean that are substantially related to this action." Affidavit of Salvatore Faso, ¶4, Docket Entry 45-3.

CASE NO. 10-21650-CIV-Moreno

Rule Regulating the Florida Bar 4-1.9(b) prohibits an attorney who has previously represented a client in a matter from using "information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known."[5]  Under the rule, once an attorney-client relationship is shown, "an irrefutable presumption arises that confidences were disclosed to that attorney."[6]  This presumption, however, does not alone establish a basis for disqualification.[7]

The commentary to the Rule establishes that although:

> [i]nformation acquired by [a] lawyer in the course of representing a client may not subsequently be used by [a] lawyer to the disadvantage of [a] client…information…that typically would be obtained by any reasonably prudent lawyer who had never represented the former client should be considered generally known and ordinarily would not be disqualifying.[8]

Additionally, in the case of an organizational client such as Royal Caribbean, "general knowledge of the client's policies and practices ordinarily will not preclude subsequent representation; on the other hand, knowledge of ***specific facts*** gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation."[9]

---

[5]     R. Regulating Fla. Bar. 4-1.9(b).

[6]     *Morgan Stanley & Co., Inc. v. Solomon,* 2009 WL 413519, *5, no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[7]     *JDI Holdings, LLC v. Jet Management, Inc.,* 2009 WL 3494182, *1, no. 3:07-cv-242-MCR-EMT (N.D. Fla. October 26, 2009).

[8]     *Morgan Stanley & Co., Inc. v. Solomon,* 2009 WL 413519, * 5,  no. 08-81330-CIV, (S.D. Fla. February 19, 2009) ((quoting R. Regulating Fla. Bar 4-1.9(b) (comment).

[9]     R. Regulating Fla. Bar 4-1.9 (comment) (emphasis supplied).

4

CASE NO. 10-21650-CIV-Moreno

Royal Caribbean's core argument is that Aronson's "extensive prior involvement with [Royal Caribbean] and his vast knowledge of [its] claims adjusting, case evaluation methods, and confidential litigation, defensive and protective strategies" creates an unfair advantage sufficient to disqualify him from representing Charlene Johnson.[10]  It has explicitly argued that this matter is analogous to *Royal Carribean v. Tuazon*, where a former claims adjustor for Royal Caribbean who later became an attorney was disqualified under Rule 4-1.9 from representing a plaintiff in a suit against Royal Caribbean.[11] In four of the six affidavits attached to its motion, Royal Caribbean discusses Aronson's so-called "vendor badge"[12] which apparently gave him "unfettered access to RCL's premises"[13] "without having to stop at the security desk."[14] The affidavits are also peppered with statements suggesting that Aronson had the same level of access to Royal Caribbean as a claims adjustor.[15]  Royal Caribbean simultaneously attempts to distinguish the applicability of Judge Marra's opinion in *Morgan Stanley & Co. v. Solomon*.[16]

The new affidavits and arguments do nothing more than demonstrate that *Morgan Stanley* is a closer fit here than *Tauzon*. To reiterate, in *Morgan Stanley*, an attorney billed approximately 1,500 hours during a two year period defending arbitration proceedings and class

---

[10]     Royal Caribbean's Amended Motion to Disqualify, p. 7.

[11]     *Id.* (*citing* 641 So. 2d 417 (Fla. 3d DCA 1994)).

[12]     Affidavit of Stacy Stanley, ¶3, Docket Entry 45-4.

[13]     Affidavit of Wendy Zepernick,¶4, Docket Entry 45-1.

[14]     Affidavit of Amy Yarrow,¶4, Docket Entry 51-1.

[15]     *See, e.g., Id.*

[16]     2009 WL 413519, *5, no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

CASE NO. 10-21650-CIV-Moreno

actions involving individuals who had sued Morgan Stanley over investment losses and then worked another three years on "other securities matters."[17]  The attorney subsequently left his old firm and began representing plaintiffs in securities arbitration matters, including three cases against Morgan Stanley.[18] Morgan Stanley attempted to disqualify their former counsel, citing Rule 4-1.9(b), and claiming that he had knowledge of "of compensation issues, broker training programs, internal policies regarding the firing of brokers, defense strategies and techniques, and information about arbitrators" that would prejudice it.[19]

Judge Marra held that the attorney's knowledge of "Morgan Stanley's discovery procedures, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley could–and presumably would – obtain after filing suit against Morgan Stanley and conducting discovery.[20]  Similarly, the attorney's knowledge of arbitrators likely to be selected by Morgan Stanley was something that any competent attorney "examining public information regarding the history of arbitrator awards" could discern.[21]

---

[17]     2009 WL 413519, *1, No. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[18]     *Id.*

[19]     *Id.* at *5.

[20]     *Id.* at *6.

[21]     *Id.*

*Tauzon*, on the other hand, involved a former *employee* who worked as a claims adjustor for Royal Caribbean, who later became an attorney and sued his former employer.[22] Royal Caribbean has attempted to fit this matter into the *Tauzon* mold, by arguing that "Aronson defended RCL in hundreds of cases and had unfettered daily access to RCL for years" and was "treated . . . as if he was an employee of the company"[23] and, through affidavits, representing that he had the same level of access to Royal Caribbean as its claims adjustors.[24]

Regardless of these broad, non-specific allegations, Royal Carribean can not avoid the fact that Aronson never represented Royal Caribbean *in this case*[25], even during the claims stage, that he never received any confidential information whatsoever about *this* case[26], and that he was never an *actual* employee of Royal Caribbean.[27] Rather, Aronson merely functioned as an independent attorney, who was retainéd on a case-by-case basis, to provide outside legal services.

In addition,   Royal Caribbean's vague, non-specific effort to compare Aronson to a claims adjustor is refuted by Aronson's earlier affidavit in this matter. Aronson specifically represented that he was never shown or possessed any claims handling materials, defense

---

[22]      641 So. 2d 417.

[23]      Affidavit of Wendy Zepernick, ¶8, Docket Entry 45-1.

[24]      *See, e.g.*, Affidavit of Amy Yarrow, ¶4, Docket Entry 51-1.

[25]      Affidavit of Aronson, ¶¶13 – 1(noting that this lawsuit was not filed until eight months after he left his defense practice)(Exhibit "A" to this motion).

[26]      Affidavit of Aronson, ¶ ¶18 – 19, Exhibit A.

[27]      Affidavit of Aronson, ¶17, Exhibit A, ( describing the firms Aronson has been employed with).

attorney manuals, litigation manual, or any other documents used by Royal Caribbean in analyzing claims.[28] Moreover, despite the dire implications inherent in the Royal Carribean affidavits, Aronson never had the ability to directly access any computers or servers that would contain confidential information from Royal Caribbean.[29] Nor did he engage in any clandestine efforts to procure documents during off hours.[30]

Indeed, if Aronson was such an integral part of the Royal Caribbean team, one must necessarily question why the number of cases his firm received from Royal Caribbean dropped from 65 in 2006, to 33 in 2007, to 4 in 2008.[31] In the final nine months of his practice, he received *one* case from Royal Caribbean. Thus, Aronson was effectively "phased out," while Royal Caribbean ramped up its own in-house legal department.[32] When Aronson left his defense practice in September of 2009, he only had seven active Royal Caribbean files remaining, which he turned over to his former partner.[33] Thus, he can not realistically be portrayed as a part of the Royal Carribean "team."

Reviewing the Royal Caribbean affidavits with full knowledge of Aronson's decreased involvement in defending claims frames them in an entirely different light. Amy Yarrow, for

---

[28]    Affidavit of Aronson, ¶8(a), Exhibit A.

[29]    Affidavit of Aronson, ¶9, Exhibit A.

[30]    *Id.*

[31]    Affidavit of Aronson, ¶¶20 – 23, Exhibit A.

[32]    Affidavit of Aronson, ¶23, Exhibit A.

[33]    Affidavit of Aronson, ¶3, Exhibit A.

CASE NO. 10-21650-CIV-Moreno

example, claims that "Mr. Aronson was very often in our offices, more so than other outside counsel" and that "[i]f Mr. Aronson *wished* to learn information regarding claims, all he had to do was ask me or another adjustor . . . [h]e did this many times."[34] If being able to ask a claims adjustor questions about a file or knowing that the cruise line hires "outside companies to address safety issues" provides a sufficient basis to disqualify a former outside counsel under Rule 4-1.9(b), it is unlikely that *any* attorney who has ever undertaken insurance defence work would *ever* be able to represent plaintiffs in this State against a former client or institutional defendant. Furthermore, the suggestion that "Mr. Aronson provided legal advice about safety issues"[35] would arguably disqualify any former defence counsel attorneys who had ever conducted CLE seminars for institutional clients on relevant or similar issues, despite the fact that this is a routine practice.

Yarrow also states that Aronson "attended *a* meeting addressing safety issues and was privy to intimate knowledge addressed at this meeting."[36]  While this might present a more compelling argument if Aronson had attended a meeting involving a potential claim by Charlene Johnson, or maybe even safety issues involving the Flow Rider, non-specific allegations concerning attendance at "a meeting" does little to advance Royal Caribbean's argument for disqualification, as this does not demonstrate that he became privy to something so secret as to compromise Royal Caribbean's entire defense of this discrete claim.

---

[34]     Affidavit of Amy Yarrow, ¶¶4 – 5, Docket Entry 51-1.

[35]     Affidavit of Amy Yarrow, ¶6, Docket Entry 51-1.

[36]     Affidavit of Amy Yarrow, ¶8, Docket Entry 51-1.

CASE NO. 10-21650-CIV-Moreno

Wendy Zepernick claims that from 1990 to 2008, she was the designated-corporate representative for Royal Caribbean for almost every deposition "*involving crew claims*, many of which were defended by Mr. Aronson."[37] Considering that Aronson's case load had plummeted 90% in the two year period from 2007 to 2009 and considering that Ms. Zepernick was a crew-claims adjustor, it is questionable whether she would have had *any* interaction with Aronson that would be remotely germane to this guest-claims case.

In similar, non-specific fashion,  Stacy Stanley, another crew-claims adjustor, remarks that "[o]n many occasions, I would call Mr. Aronson about a claim I was handling and ask advice of valuing the claim. I would share my thoughts on the claim and what my valuation was."[38] How does this differ from conversations that occur thousands of times a day between corporate litigants and their outside counsel?  David Banciella, the only Royal Carribean adjuster who handled guest claims, makes the exact same statement.[39]   Presumably, both apparently disclosed and discussed information that any defense attorney who has been practicing for more than a few years would know from personal experience, or could presumably learn from a jury verdict search on Westlaw or LEXIS.

Carrying over from Royal Caribbean's prior motion is the declaration of Director of Guest and Employee Legal services, Salvatore A. Faso II, who claims that Aronson was privy to "confidential information" that he would not have been able to obtain but for his relationship

---

[37]     Affidavit of Wendy Zepernick,¶5, Docket Entry 45-1.

[38]     Affidavit of Stacey Stanley, ¶4, Docket Entry 45-4.

[39]     Affidavit of David Banciella,¶5, Docket Entry 45-5.

CASE NO. 10-21650-CIV-Moreno

with Royal Caribbean.[40] Mr. Faso, was who was not employed by Royal Caribbean during most of Mr. Aronson's tenure as outside counsel, Aronson became privy to the following "confidential information":

> Which experts Royal Caribbean uses. . . the process [it] employs to arrange medical care for its passenger . . . internal and external factors that increase the difficulty of defending such claims . . . Royal Caribbean's internal claims handling procedures . . .Royal Caribbean's approach to settlement . . . Identification of potential deficiencies in [its] case . . .remedial action suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard [its] vessels.[41]

Royal Caribbean summarizes this generalized and deliberately non-specific list by concluding that "Aronson was given Royal Caribbean's playbook"[42] and that the information in this list is "not information that is generally known...and is not the type of information that would be provided to an opposing counsel during discovery."[43]

Arguably, this Court should not need to resort to Aronson's affidavit to recognize that the information Royal Caribbean is presently labelling as "confidential" and inaccessible really is not. Indeed, as Aronson sets forth in his affidavit, much of this information is readily discoverable and relevant;[44] and some is a matter of public record.[45] Aronson is also completely

---

[40]   Affidavit of Salvatore Faso ¶7, Docket Entry 45-3.

[41]   Affidavit of Salvatore Faso ¶7, Docket Entry 45-3.

[42]   Affidavit of Salvatore Faso ¶8, Docket Entry 45-3.

[43]   Affidavit of Salvatore Faso ¶9,Docket Entry 45-3.

[44]   Affidavit of Aronson, ¶¶11 (b) and (c), Exhibit A.

[45]   Affidavit of Aronson, ¶11 (b), Exhibit A.

CASE NO. 10-21650-CIV-Moreno

unaware of the existence of any such "confidential information," such as the so-called Royal Caribbean litigation "play book,"[46] and has affirmatively stated that this type of information does not exist, to his knowledge.  His affidavit in that regard is quite detailed, unlike the generalized, generic collection of materials referenced in Royal Caribbean's affidavits. Indeed, Royal Caribbean revamped its entire claims department, hired in house legal attorneys, and brought in Faso from Carnival Cruise Line and Paul Hehir to direct litigation in November 2007.  Whatever "playbook"Royal Caribbean   was using is certainly obsolete at this juncture–along with Aronson.

The balance –  in fact the vast majority –  of the materials mentioned in the affidavits reflect information that any attorney who litigates regularly with Royal Caribbean would discover in due course.[47]  As has been noted in the cited authority, the mere fact that Aronson may have pre-existing knowledge of information that will ultimately be disclosed through discovery – even if it may provide a momentary, initial advantage at the onset of litigation-does not warrant disqualification.[48]   Rather, as has been set forth by the Commentators to the Restatement of the Law Governing Lawyers, the fact that a lawyer may learn a former client's "preferred approach to bargaining in settlement discussions…[or] willingness or unwillingness to be deposed by an adversary" does not warrant disqualification absent a showing that "such

---

[46]     Affidavit of Aronson, ¶8 (a); 11(c), (d), (e), Exhibit A.

[47]     Affidavit of Aronson, ¶11, Exhibit A.

[48]     *Kaplan v. Divosta Homes, L.P.,* 20 So. 3d 459, 463 (Fla. 2d DCA 2009) (case evaluated under Rules 4-1.7, 4-1.8, and 4-1.9).

CASE NO. 10-21650-CIV-Moreno

information would be directly in issue or of unusual value in the subsequent matter."[49] As a result, it would not matter that Aronson was already aware of claims valuations, or that Royal Caribbean uses an outside safety company, as he would be able to find that information on his own through sources *any* competent attorney could utilize. This type of information is not reflective of secrets or *specific facts* about this matter, which would give Aronson an unfair advantage, premised upon confidential information.  Royal Caribbean's motion should be denied.

B.      **"Substantially Related" as used in 4-1.9 means representation in the same matter or one where the attorney will be required to attack his previous work.**

Under Rule 4-1.9(a) an attorney who has previously represented a client in a matter cannot subsequently "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of a former client unless the former client gives informed consent."[50]  A standing caveat to this rule prohibits disqualification of a "lawyer who recurrently handled *a type of problem* for a former client" who then later represents "another client in a wholly *distinct problem of that type* even though the subsequent representation involves a position adverse to the prior client.[51] In addition, the term "substantially related" was defined — and defined narrowly — by additional commentary added

---

[49]      Restatement (Third) of the Law Governing Lawyers §132, comment d(iii); *see also Vestron, Inc. v National Geographic Soc.,* 750 F. Supp. 586 (S.D.N.Y. 1990) (under New York analogue to Rule 4-1.9, mere insight into "litigation thinking", if deemed basis for disqualification, would mandate disqualification in virtually every successive representation situation; motion for disqualification denied)).

[50]      R. Regulating Florida Bar 4-1.9(a).

[51]      R. Regulating Fla. Bar. 4-1.9 (comments)(emphasis supplied).

CASE NO. 10-21650-CIV-Moreno

to Rule 4-1.9 in 2006.[52] According to the prevailing Rule, matters are only considered substantially related if they "involve the same transaction or legal dispute, or if the current matter would involve the attorney attacking work performed for the former client.[53] Yet even under earlier versions of the Rule, the core question has always required the court to determine "whether the lawyer was so involved in the *matter* that the subsequent representation can justly be described as *changing of sides in the matter in question*."[54]

Here, Royal Caribbean suggests on pages 4, 7, and 9 of its Motion that this matter is substantially related to previous cases Aronson worked on. It argues that "Aronson's prior representation of RCL is so significant that it renders his representation in this case an effective 'changing of the sides.'"[55] As has been made clear by the case law and the commentary to the rules themselves, this is *precisely* the type of allegation that does not meet the "substantially related" definition expressed in the Commentary to Rule 4-19(a). Matters are <u>only</u> considered substantially related if they "involve the same transaction or legal dispute, or if the current matter would involve the attorney attacking work performed by the former client."[56] Thus, in order for Royal Caribbean to succeed in showing a substantial relationship, it must show that

---

[52]     *In re Amendments to the Rules Regulating the Florida Bar*, 933 So. 2d 417, 445 (Fla. 2006).

[53]     R. Regulating Fla. Bar. 4-1.9 (comments).

[54]     *Id.*

[55]     Amended Motion for Disqualification, p.4.

[56]     R. Regulating Florida Bar. 4-1.9 (comments).

CASE NO. 10-21650-CIV-Moreno

Aronson represented it in *this* case or switched sides in *this matter, and not a matter that is superficially similar.*

1. ***Aronson's work as outside defense counsel for Royal Caribbean is not substantially related to the Johnson case; Rule 4-1.9(a) is not implicated by his representation.***

The fact that Aronson previously represented Royal Caribbean in numerous prior negligence cases is immaterial and does not alone serve as a basis to disqualify him in this case. As the commentary defines the Rule, and as the cases apply the Rule and commentary, it is not the frequency of cases that matter. Rather, it is the overlap of specific facts that may subject an attorney to disqualification. To do otherwise would be to disregard the axiom that "disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly".[57] Indeed, such a rationale would effective exclude the most qualified of attorneys from representing plaintiffs simply because they have mastered a particular branch of the law.[58]

In *Morgan Stanley v. Solomon*, supra, Judge Marra found no Rule 4-1.9(a) violation for an attorney who represented Morgan Stanley for two years and then switched sides.[59] He specifically noted that the attorney was involved in "the same *type* of cases" – arbitrations involving investors against Morgan Stanley – but not the *same transactions*.[60] The Court

---

[57]    *Health Care and Retirement Corp. of America, Inc. v. Bradley*, 944 So. 2d 508, 511 (Fla. 4th DCA 2006) (*quoting Singer Island, Ltd. v. Budget Constru. Co.*, 714 So. 2d 651, 652 (Fla. 4th DCA 1998)).

[58]    Restatement (Third) of the Law Governing Lawyers § 132, comment d(iii).

[59]    2009 WL 413519, * 3 -5,  no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[60]    *Id.* At 3-4 (emphasis supplied).

CASE NO. 10-21650-CIV-Moreno

predicated its opinion in part upon the fact that "like negligence cases, each of [the attorney's] cases involved unique facts."[61]   Furthermore, in representing his new clients, the attorney was not required to attack his own work.[62]  He was simply obligated to advance legal theories that would have been presented by any competent and experienced lawyer.[63]

Judge Marra's opinion relied in part upon *Health Care and Retirement Corp. of America, Inc. v Bradley.*[64]  There, an attorney who formerly represented a nursing home in some sixty negligence cases (billing 2,100 hours) began representing patients in similar negligence cases against his former client.[65]  The nursing home moved unsuccessfully to disqualify their former counsel.  Florida's Fourth District Court of Appeal noted that the attorney had previously handled a similar "type of problem" for the nursing home -- "negligence cases involving patients who suffered from pressure ulcers or falls".[66]  Nevertheless, the Court expressed the opinion that the new case involved a "wholly distinct problem of that type."  The Court contrasted representation in a general negligence claim with the hypothetical situation that might arise where an attorney represents a manufacture in a specific product defect case and then subsequently files suit against the former client-manufacturer based upon the same defect in that

---

[61]     *Id.* at 4.

[62]     *Id.*

[63]     *Id.*

[64]     961 So. 2d 1071 (Fla. 4th DCA 2007).

[65]     *Id.* at 1072.

[66]     *Id.* at 1074.

CASE NO. 10-21650-CIV-Moreno

same product.[67]   The Court expressly noted that "each negligence case turns on its own facts" and therefore would not be substantially related under Rule 4-1.9(a) merely because they were the same *type* of case.[68]

In *Royal Caribbean Cruises, Ltd. v. Buenaagua*, Florida's Third District Court of Appeal declined an invitation to again disqualify the attorney in *Tauzon* from representing several injured crew members in suits against Royal Carribean.[69] The Court noted — in addition to the passage of time — the claims adjustor the attorney worked for was no longer associated with Royal Carribean and that the accidents giving rise to the lawsuit occurred well after his employment as an adjustor ended, ensuring there was no possibility he would have access to information from his previous employment that would give him a present advantage.[70] A prophetic quote from that opinion is instructive here:

> RCCL's affidavits merely related what every lawyer already knows:  Jones Act cases are all similar.  This is a basic principle of our jurisprudential system.  All patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, *negligence* and immigration cases, and all cases of any singular type share elements in common.[71]

---

[67]   *Id.* 1074 (*referring to Sears, Roebuck & Company v. Stansbury*, 374 So. 2d 1051 (Fla. 5th DCA 1979) (attorney's firm who represented Sears in a defect case in 1969 involving a lawnmower could not then represent a plaintiff in a case *involving the same lawnmower* against Sears.)  The Fourth District noted that the representation would have required the attorney to attack his previous work. *See also Contant v. Kawasaki Motors Corp. U.S.A.*, 826 F. Supp. 427 (M.D. Fla. 1993) (attorney who switched sides in subsequent product defect liability case was disqualified).

[68]   *Id.*

[69]   685 So. 2d 8, 10 (Fla. 3d DCA 1996).

[70]   *Id.* at 10 – 11.

[71]   *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So. 2d 8, 11 (Fla. 3d DCA 1996) (emphasis supplied).

As Aronson notes in his affidavit, *Johnson* is a negligence case involving a woman who was injured while using a Flow Rider surfing attraction while staying as a guest on the Oasis of the Seas.[72] The case involves its own unique factual circumstances, many of which are novel even for an attorney of Aronson's considerable experience. Notably, neither Aronson nor his firm ever worked on a case involving the Flow Rider when he was actively defending Royal Caribbean.[73] The Oasis of the Sea's maiden voyage was on December 5, 2009 and Johnson was injured on January 31, 2010 — both occurring well after he had left his defense practice in September of 2009.[74] As a consequence, he was <u>never</u> involved in a case involving Ms. Johnson or any of the *specific* facts of her case.[75] Because disqualification requires a showing that the attorney essentially switched sides in the same case or will be required to attack his own work in the case against his former client, and because Aronson had nothing to do with the *Johnson* case, or any unique, particularized knowledge about the case, there is no basis to disqualify him under Rule 4-1.9(a).

## Conclusion

Disqualification of counsel is an "extraordinary remedy and should only be resorted to sparingly."[76] Royal Carribean appears to advance disqualification as a means to a gain tactical advantage, and to deprive a litigant of her chosen counsel. Royal Caribbean–in two separate

---

[72]     Affidavit of Aronson, ¶13, Exhibit A.

[73]     Affidavit of Aronson, ¶¶15-19, Exhibit A.

[74]     Affidavit of Aronson, ¶¶13 – 15, Exhibit A.

[75]     Affidavit of Aronson, ¶17, Exhibit A.

[76]     *Singer Island ltd. Inc. v. Budget Const. Co., Inc.* 714 So. 2d 651, 652 (Fla. 4th DCA 1998).

CASE NO. 10-21650-CIV-Moreno

motions – has failed to show that Aronson is in possession of confidential information, not readily accessible by prudent counsel, that would prejudice it in the defense of the *Johnson* claim. Furthermore, its efforts to label Aronson as the functional equivalent of a claims adjustor is refuted by Aronson's affidavit and the facts. Finally, there is no basis to establish that this matter is substantially related, to any of Aronson's previous work. Therefore, this Court should deny Royal Caribbean's amended motion to disqualify.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court and served on the following by using the CM/ECF system on 2nd day of September, 2010 to: Curtis J. Mase, and Valentina Tejera, Esq., Mase, Lara, Eversole, P.A., 2601 S Bayshore Drive, Suite 800, Miami, FL 33133 and James M. Walker, Esq. Walker & O'Neill, P.A., 7301 S.W. 57th Court, South Miami, Florida 33143.

STEPHENS, LYNN, KLEIN, P.L.
Attorneys for Jonathan Aronson
9130 S. Dadeland Blvd., PH II
Two Datran Center
Miami, Florida 33156
Telephone: (305) 670-3700
Email: kleinr@stephenslynn.com

By: /s/ Robert M. Klein
       ROBERT M. KLEIN
       Florida Bar No. 230022