IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 10-21650-CIV-MORENO/TORRES

CHARLENE I. JOHNSON,

        Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

        Defendant.

_____/

### WALKER'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S FIRST AMENDED MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Plaintiff's counsel, **WALKER & O'NEILL, P.A.** ("Walker"), hereby files this Memorandum in Opposition to Defendant, **ROYAL CARIBBEAN CRUISES, LTD.'s**, First Amended Motion to Disqualify Plaintiff's Counsel, and as grounds therefore, state as follows:

#### Background

Attorney Jonathan Aronson ("Aronson"), one of many of Royal Caribbean's outside defense lawyers in Miami, decided in September 2009 not to handle any further cases on behalf of Royal Caribbean after the cruise line excluded him as a regular part of its outside defense team.  He returned his few cases back to Royal Caribbean, disbanded his old firm and opened his own one lawyer firm.  Several months later in December 2009, Royal Caribbean launched a new class of cruise ship, the *Oasis of the Seas*.  Two months later on January 31, 2010, passenger Charlene Johnson was seriously injured while riding a FlowRider surfing activity the *Oasis of the Seas.*  On June 28, 2010, five months after Ms. Johnson's accident and ninth months after he ended his

relationship with Royal Caribbean, Aronson appeared as co-counsel in his case.

After abandoning its original motion for disqualification [D.E. 17], Defendant filed a "first amended" motion to disqualify Aronson and Walker, from representing Plaintiff in this matter [D.E. 45] . Like its predecessor, this "amended" motion is factually and legally insufficient.

## Defendant's Amended Motion
## Does Not Correct the Original Motion

From the onset, Defendant made clear that it intends to disqualify Aronson in every case - at any cost - regardless of controlling law or the specific facts of a particular case.  Defendant does not want to see Aronson and Walker co-counsel any Royal Caribbean cases, under any circumstance. It wants to make an example of Aronson to send a message to the local maritime defense bar not to switch sides.[1]

Defendant argues that Aronson's knowledge of the cruise line's general corporate policies and procedures are the basis for disqualification.  Its motion is grossly over-stated.  Defendant attempts to depict Aronson as an employee of the cruise line and as the architect of Defendant's defense strategies and procedures.  It characterizes Aronson as the hub of its defense practice with "sweeping knowledge" of the entirety of Defendant's corporate confidences.  The truth, however, is far more pedestrian.  Aronson was one lawyer out of eight defense law firms totaling fifty lawyers in Miami representing the Defendant over the years until the cruise line began culling him from its roster of outside counsel.

 Beginning in 2007, Defendant embarked on building an in-house litigation team in order to keep the cases in-house.  Far from being the indispensable "uber" attorney depicted by the

---

[1]Walker Affidavit, p. 10, 11, paragraphs 34-37 [D.E. 34].

Defendant, Aronson and his firm were some of the first attorneys to be phased out.   The fact that Defendant sent him 65 cases to handle in 2006 and only one in 2009 bears this out.

The knowledge allegedly possessed by Aronson regarding the Defendant's policies and procedures is precisely the information permitted under the comments to Rule 4-1.9(b).  Comments to the rule state:

> In the case of an organizational client, <u>general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation</u>; on the other hand, knowledge of <u>specific facts</u> gained in a prior representation that are <u>relevant</u> to the matter in question ordinarily will preclude such a representation. (emphasis added).

Even if, for the purpose of argument, Aronson did possess knowledge of **specific facts** regarding other cases, Defendant has wholly failed to identify those specific facts or show how they might be relevant to this particular action.

Defendant does not bother explaining the facts of this specific case, or make any attempt to relate any prior case Aronson handed to this case.  But the facts of this case are indeed unique.  This case involves a passenger who "wiped out" while rising a boogie board on the "FlowRider"water attraction on Defendant's newest cruise ship, the *Oasis of the Seas,* in January 2010.  The *Oasis* did not come into service until after Aronson ended his relationship with Defendant in September 2009. Aronson has never participated in or defended a FlowRider case, and he has never been on the *Oasis of the Seas* which is a new class of cruise ship.

### Disqualification By Innuendo?

Because Aronson has no knowledge regarding this cruise ship or the FlowRider water attraction,  Defendant resorts to innuendo[2] to try and disqualify Aronson.  Defendant again chose to

---

[2]The declaration of Faso goes as far as to accuse Aronson of taking confidential information for his own use.  Paragraph 6 states: "He had access to privileged files containing

base its motion on the hearsay declaration in-house lawyer, who has no personal knowledge of any matters prior to his employment with the cruise line in 2008, and five new affidavits of claims adjusters - four of who handled *crew member* cases and have no application to this passenger case).

The affidavits filed in support of the amended motion stress that Aronson had physical access to Defendant's office.[3]   Physical access does not, however, mean that Aronson had access to computer systems, files and other data bases.   He did not.   The affidavits fall short of making this accusation because they cannot.   By design, however, they are designed to leave the reader with the unsavory feeling that just maybe while Aronson was in Defendant's office he was accessing computers or sneaking around and peeking into files.   But this did not happen and there is a complete absence of evidence supporting such allegations.   Defendant's latest motion lacks specific facts but is rich with innuendo and insinuation.

This smear job by Defendant continues with the suggestion that Walker joined Aronson as co-counsel for the purpose of obtaining a tactical advantage through the use of confidential

---

attorney-client correspondence, policies, procedures and practices, and confidential and proprietary information and records (copies of which Aronson likely still possesses), none of which he would have been able to access but for his representation of Royal Caribbean." But there are no facts presented by Defendant indicating Aronson has any such records. [D.E. 49-3].

[3]Michele Perez' Affidavit paragraph 4 states "Mr. Aronson was very often in our offices, more so than other outside counsel.  He had a vendor badge which allowed him to come and go as he pleased, without having to stop at the security desk.  His level of access to areas at RCL was the same as mine."[D.E. 49-6].  Stacy Stanley Affidavit paragraph 3 states " He had a vendor badge which allowed him the same level of access to areas at RCL as I had." [D.E. 49-4]. Amy Yarrow Affidavit paragraph 4 states "His level of access at RCL was the same as mine." [D.E. 49-2].  Wendy Zepernick Affidavit paragraph 4 states ". . . Mr. Aronson, had unfettered access to RCL's premises thorough the use of his vendor badge and access to RCL's internal data bases through RCL personnel." Paragraph 7 states: "His vendor badge allowed him the same level of access in the offices and on the ships as I had.  He would not have had such a badge if he was [sic] not considered to be absolutely trusted, as if he was [sic] an employee of the company.

information.  What confidential information?  Defendant does not say.  Although  a party seeking

disqualification does not have to reveal the details of genuine client confidences which are material

to the matter, a party must at least identify the confidential matter with particularity sufficient to

create a privilege log.  Defendant does not even specify whether the alleged confidential information

involved a *cruise passenger* as opposed to a *cruise line employee*.  Indeed, four of the new affidavits

attached to Defendant's amended disqualification motion were signed by cruise line employees in

the cruise line's *crew claims department* (Wendy Zepernick, Amy Yarrow, Stacey Stanley, and

Michelle Perez).  Their allegations may date back as long as ten years ago, particularly considering

Defendant had effectively phased Aronson out in 2008 - 2009.  What does such information about

a crew member case have to do with this passenger injury on a new class of cruise ship?  Defendant

does not state and there is no evidence introduced to establish such a connection. Defendant's

affidavits are so vague and conclusory that it is impossible to determine whether there is an alleged

client secret that Aronson possesses having anything to do with this, or any other,  passenger case.[4]

## The Case Law Does Not Support Aronson's Disqualification

In 2006, the Rules of Professional Conduct were amended (the "2006 amendments")

changing the landscape of attorney disqualifications in Florida.[5]  While motions for disqualification

---

[4]Disqualification is fact specific.  For example, in *Morgan Stanley & Co. v. Soloman,* 2009 W L 413519, *1, No. 08-81330-Civ, (S.D. Fla. February 19, 2009), Federal District Judge Marra found no violation of Rule 4 -1.9(a) because the attorney was involved only in "the same type of cases" - but not the *same transactions.*

Judge Marra's opinion relied in part upon *Health Care and Retirement Corp. Of America, Inc. v. Bradley,* 961 So. 2d 1071 (Fla. 4th DCA 2007).  The Court expressly noted that "each negligence case turns on its own facts" and therefore would not be substantially related under Rule 4-1.9(a) merely because they were the same *type* of case.

[5]Defendant implies that this matter is governed by the "appearance of professional impropriety"standard.  This is not, nor has it ever been the applicable standard in Florida.

were always granted sparingly,[6] the amended rules gave a narrower scope to their application. Following the 2006 amendments, Rule 4-1.9 is "not to be broadly applied to require disqualification." Health Care & Ret. Corp. v. Bradley, 961 So. 2d 1071, 1073 (Fla. 4th DCA 2007). "Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice and such motions are often interposed for tactical purposes." Manning v. Cooper, 981 So.2d 668, 670 (4th DCA 2008) citing Alexander v. Tandem Staffing, 881 So. 2d 607, 608-609 (Fla. 4th DCA 2004).

### Amended Rule 4-1.9 of the Rules of Professional Conduct

Defendant's Motion is governed by Rule 4-1.9 of the Rules of Professional Conduct governing former-client conflicts. Rule 4-1.9 and in particular, the comments applicable to the rule were substantially changed by the 2006 amendments. Defendant's motion lacks candor in failing to point out these substantial amendments. Rule 4-1.9 articulates two bases to disqualify an attorney litigating against a former client - if the matter is "substantially related' or if the representation would allow the former attorney to use confidential information obtained in the prior representation to the disadvantage of the former client. It provides as follows:

---

Baybrook Homes, Inc. v. Banyan Constr. & Dev., Inc., 991 F. Supp. 1440, 1442 (M.D. Fla. 1997)("even if the Court were to adopt the appearance of impropriety standard, . . . disqualification would not be warranted in this case"). As recognized by the court in Morgan Stanley Co. v. Solomon, 2009 WL 413519 *6 (February 19, 2009 S.D. Fla.), "Morgan Stanley also argues that Mr. Solomon can be disqualified based on the appearance of impropriety. The Court rejects this claim. Simply put, based on the Court's finding that Mr. Solomon has not violated either subsection of Rule 4-1.9, there is no basis to find the appearance of impropriety."

[6]"[Since] the remedy of disqualification strikes at the heart of one of the most important associational rights it must be employed only in extremely limited circumstance." Coral Reef v. Lloyd's, 911 So. 2d 155, 157 (3rd DCA 2005). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003).

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of a former client unless the former gives informed consent; or

(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

R. Reg. Fla. Bar 4-1.9 (2006).

### Rule 4-1.9(a) "Substantially Related"

Defendant's motion fails to point out that comments to Rule 4-1.9 (a) create a new and narrow definition of the term "substantially related:"

Matters are "substantially related" for purposes of this rule if they involve the <u>same transaction or legal dispute</u>, or if the current matter would <u>involve the lawyer attacking work that the lawyer performed for the former client</u> (emphasis added).

Defendant's motion urges this Court to apply an erroneous definition of "substantially related" matters by arguing that every single one of Aronson's prior cases is similar to this one!

In narrowly drawing the term "substantially related," Rule 4-1.9 (a) recognizes that over the course of their career, many lawyers will and often do litigate against a former client. This in and of itself is not grounds to disqualify an attorney. Indeed, the comments to the rule expressly envision and permit this practice. "[A] lawyer who recurrently handled a type of problem of a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." In ruling on a motion to disqualify, courts are instructed to focus on whether the adverse representation <u>actually involves the same matter</u> or whether, in fact, it is a new matter simply involving the same general type of litigation.

-7-

### Substantially Related - Representation on Same Type of Case is Permitted

In <u>Health Care & Ret. Corp. v. Bradley</u>, 961 So. 2d 1071 (Fla. 4th DCA 2007)[7] the Fourth

District Court of Appeal addressed a similar situation in which an attorney (Fisher) had recurrently

defended a former client in nursing home negligence cases.  Health Care sought to disqualify Fisher

in a case involving claims for negligent failure to monitor the decedent's "skin integrity," which

allowed "pressure ulcers" to develop, and negligent failure to take adequate measures to prevent

falls.  <u>Id.</u> at 1072.  Fisher had previously represented Health Care from February 2001 to December

2004.   During that time he billed in excess of 2,100 hours to Health Care in at least sixty cases,

including many negligence cases involving "pressure ulcers" and falls.  <u>Id.</u> at 1072.

 Noting that 'substantially related' is a  "narrowly defined concept," the court refused to

disqualify Fisher.  <u>Id.</u> at 1073.  It concluded that Fisher had previously "handled a 'type of problem'

for Manor Care" and that the present representation while involving the same type of litigation was

"a wholly distinct problem of that type." <u>Id.</u>  1074.  The cases were not substantially related under

Rule 4-1.9(a) as "each negligence case turns on its own facts." <u>Id.</u> at 1074.

When faced with a similar case, involving an attorney's previous recurrent representation of

a client in securities arbitration cases, Judge Mara reached a similar conclusion.  <u>Morgan Stanley Co.</u>

<u>v. Solomon</u>, 2009 WL 413519 (S.D. Fla.).   Morgan Stanley sought to disqualify an attorney

(Solomon) who had previously represented the company in arbitrations brought by investors against

the company.   Solomon brought arbitration claims against Morgan Stanley on behalf of clients.

Earlier in his career Solomon had represented Morgan Stanley over a two year period and had billed

approximately 1,500 hours.  <u>Id.</u> *1.  During his tenure, Solomon had conferred with Morgan Stanley

---

[7]<u>Health Care and Retirement v. Bradley</u>, 944 So. 2d 508 (4th DCA 2006)

brokers, branch office mangers, branch administrative managers and in-house attorneys. Id. *1. He

became familiar with Morgan Stanley's system for handling discovery, settlement evaluations,

compensation structure and factors considered by in-house counsel in terms of case settlement Id.

*1-2. For a period of time he worked on his firm's database of arbitrators which was used by

lawyers in selecting arbitrators in Morgan Stanley arbitrations.  Id. *1-2.

Morgan Stanley contended that Solomon's representation of clients in arbitration violated

Rule 4.1-9(a) due to:

> (1) Mr. Solomon's use of the same theories of recovery that he defended against as
> counsel for Morgan Stanley; (2) Mr. Solomon's attack on legal arguments he
> advanced while working at Greenberg Traurig; (3) the filing of a lawsuit against the
> Fort Lauderdale branch of Morgan Stanley that he previously represented and (4) the
> filing of a lawsuit pitting Mr. Solomon against the same in-house counsel with whom
> he worked while employed at Greenberg Traurig.

Id.  *3. The court rejected Morgan Stanley's arguments, concluding that although the cases involved

the same types of claims, "like negligence cases, each of Mr. Solomon's cases involve unique facts."

Id.  *4.

> Here, the claims are the same type; that is, claims arising in the context of arbitrations
> brought by investors in securities against Morgan Stanley.  Given that the claim is the
> same type, Morgan Stanley is correct that the same theories of recovery and legal
> arguments are being used by Mr. Solomon against Morgan Stanley.  Likewise, the
> same individuals, *i.e.* members of Morgan Stanley's Fort Lauderdale branch and in-
> house counsel, are involved in the current law suits.  These facts, however, do not
> demonstrate that the cases are "substantially related."(emphasis added).

Id.  *3.

### Substantially Related - Representation on The Same Type of Case is Not
### an Attack on Attorney's Own Legal Work

Implicit in the comments to the rule allowing attorneys to former oppose a client in the same

types of cases, is the recognition that the attorney will be advancing legal theories opposite to the

ones advance on behalf of the former client.  As recognized by the Judge Marra in the <u>Morgan</u> <u>Stanley</u> case, this does not rise to the level of attacking the attorney's prior legal work as forbidden by Rule 4-1.9(a) as these theories "would be raised by any competent legal counsel in these types of arbitrations."  <u>Id.</u>*4.

   This case is in direct contrast to <u>Sears, Roebuck & Co. v. Stansbury</u>, 374 So. 2d 1051 (Fla. 5th DCA 1979), which although decided before the 2006 amendments is instructive.  <u>Health Care &</u> <u>Ret. Corp. v. Bradley</u>, 961 So. 2d 1071, 1073 (Fla. 4th DCA 2007)("The holding of <u>Stansbury</u> would be the same under the 2006 Comment to Rule 4-1.9").   In <u>Stansbury</u>, the lawyer sued Sears, his former client and the manufacturer and seller of a lawnmower, alleging the same defect, in the same lawnmower which he had previously defended on behalf of Sears.  The court found that an "obvious" "substantial relationship" existed between the cases, but remanded the case for an evidentiary hearing on the matter.  As summarized by the <u>Bradley</u> court, disqualification was required in the <u>Stansbury</u> case because "The second lawnmower suit required the attorney to "attack the work that the lawyer performed for the former clients; the lawsuit sought to establish the defectiveness of the same lawnmower that the lawyer defended from the same attack in the first lawsuit." <u>Bradley</u>, p. 1073. "[I]n <u>Stansbury</u>, the lawyer sued his former client based on the identical facts at issue in the case he defended, i.e. the defective design of a lawnmower." <u>Morgan Stanley</u>,* 4.

### This Case is Not Substantially Related to Prior Aronson Cases and Defendant has Failed to Meet its Burden of Proof

   Under Rule 4-1.9(a), the moving party has the burden of proof in showing that the attorney to be disqualified formerly represented the moving party in the same or a substantially related matter. <u>See</u>, <u>e.g.</u>, <u>Health Care v. Bradley</u>, 944 So. 2d 508, 512-513 (4th DCA 2006).  Defendant failed meet

-10-

its burden of proof.

This case falls squarely under the holding of the <u>Bradley</u> and <u>Morgan Stanley</u> cases. As sanctioned by the Rule 4-1.9, Aronson seeks to represent a new client against Defendant in a case involving, at best, only the same general type of negligence allegations. Other than being a routine case of negligence, the present case is completely different from any case previously defended by Aronson. Plaintiff's injuries occurred on the *Oasis*, a new class of ship, which was brought into commission after Aronson had left his prior law firm and had stopped defending the cruise line. Aronson Affidavit [D.E. 28-1 - ¶14-15]. The injuries occurred while the Plaintiff was participating in a FlowRider surfing lesson. Neither Aronson nor his prior law firm ever defended or had any involvement in a Flowrider case. Aronson Affidavit [D.E. 28-1 - ¶16-18]. Nor did Aronson or his prior law firm ever defend or have any involvement in a case such as this, where the passenger was required to sign a waiver in order to participate in the activity. Aronson Affidavit [D.E. 28-1 - ¶19]. Neither Aronson or his prior law firm ever drafted any such participation waivers for Defendant.

Paragraph 7(g) of the Faso declaration alleges that Aronson knew of "remedial actions suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard Royal Caribbean's vessels." Aronson refutes this allegation, and it should be noted that the *Oasis* was not even in service at the time Aronson left his prior firm. Aronson Affidavit [D.E. 28-1 - ¶11 (g), 14-15]. It is hard to envision how remedial measures could exist with respect to a new ship still under construction in a shipyard.

### Rule 4-1.9(b) Confidential Information

The second basis for disqualifying an attorney is under subpart (b) of Rule 4-1.9 if the attorney uses confidential information obtained in the representation of a former client to the former

client's disadvantage.  Comments contained in the 2006 amendments substantially limit the scope

of what constitutes disqualifying confidential information. Rule 4-1.9(b) specifically allows attorneys

to use generally known information regarding former clients:

> However, the fact that a lawyer has once served a client does not preclude the lawyer form
> using <u>generally known information</u> about that client when later representing another client.
> <u>Information that has been widely disseminated by the media</u> to the public, or that typically
> would be <u>obtained by any reasonably prudent lawyer</u> who had never represented the former
> client, should be considered generally known and ordinarily will not be disqualifying.  The
> essential question is whether, but for having represented the former client, the lawyer would
> know or discover the information.  Information acquired in a prior representation may have
> been rendered obsolete by the passage of time.  In the case of an organizational client,
> <u>general knowledge of the client's policies and practices ordinarily will not preclude a</u>
> <u>subsequent representation;</u> on the other hand, knowledge of specific facts gained in a prior
> representation that are relevant to the matter in question ordinarily will preclude such a
> representation. (emphasis added).

"Generally known information" is broadly defined as information which had been broadly

disseminated by the media or which would otherwise be obtained by a reasonably prudent lawyer.

General knowledge of a client's policies and practices are included within the definition of

"generally known information."

Defendant alleges that Aronson is using knowledge that he gained through his previous

representation of Defendant.  Faso declaration ¶7.  Paragraph 7 of the declaration identifies seven

types of confidential information allegedly known by Aronoson which serve as the basis for his

disqualification under Rule 4-1.9(b):

> a) which experts Royal Caribbean uses; b) the processes that Royal Caribbean
> employs to arrange for medical care for its passengers; c) internal and external factors
> that increase the difficulty in defending such claims; d) Royal Caribbean's internal
> claims handling procedures; e) Royal Caribbean's approach to settlement; f)
> identification of potential deficiencies in Royal Caribbean's case; and g) remedial
> actions suggested by Royal Caribbean's inside counsel to Aronson that should take
> place aboard Royal Caribbean's vessels.

Aronson and Walker vigorously dispute the veracity of Faso declaration.  Aronson Affidavit, [D.E. 28-1 - ¶8 and 11]; Walker Affidavit [D.E. 34 - ¶26 and 42].  Even if the facts of the Faso declaration were taken at face value, the general information described therein is not the type of information that requires disqualification under Rule 4-1.9(b).  In fact, the type of information cited by Defendant as disqualifying Aronson is precisely the type of general knowledge permitted under Rule 4-1.9.  Faso cites no specific facts.  His affidavit contains only general, conclusory allegations, undoubtedly because he was working at a different cruise line (Carnival) from 2000 through 2008!

### General Knowledge of Corporate Policies and Procedures as Opposed to Knowledge of "Specific Facts" Cannot Form a Basis to Disqualify Counsel

In the Morgan Stanley case, the court addressed this very issue.  Morgan Stanley argued that the former attorney should be disqualified because his knowledge regarding "compensation issues, broker training programs, internal policies regarding the firing of brokers, defense strategies and techniques, and information about arbitrators."  Morgan Stanley *5.   The court rejected Morgan Stanley's argument concluding that knowledge of Morgan Stanley's "discovery procedure, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley would obtain by virtue of filing suit against Morgan Stanley and conducting discovery." Id. *6. [8]   See also Restatement (Third) of Law Governing Lawyers § 132 cmt. d(iii) (2001) (stating that knowledge of a former client's "preferred approach to bargaining in settlement discussions or negotiating business points in a transaction, willingness or unwillingness to be deposed by an adversary, and financial

---

[8]  The holding of courts addressing this issue in other jurisdictions is instructive.  See Vestron, Inc. v. Nat'l Geographic Soc'y, 750 F. Supp. 586 1595 (S.D.N.Y. 1990) (holding that general understanding of former client's "general litigation thinking" is not basis for disqualification).

ability to withstand extended litigation or contact negotiations" is relevant to a substantial-relationship assessment "[o]nly when such information will be directly at issue or of unusual value in the subsequent matter").

### The Case Relied Upon by Defendant is Distinguishable

Instead, Royal Caribbean relies almost exclusively on *Royal Caribbean v. Tuazon,* 641 So. 2d 417 (Fla. 3d DCA 1994), where a former claims adjuster for Royal Caribbean who later became an attorney was disqualified under Rule 4-1.9 from representing a plaintiff in a suit against Royal Caribbean. Defendant is hanging its hat on <u>Tuazan</u>, and this is why Defendant tries to turn Aronson, an outside lawyer, into an employee of the cruise line. However, Royal Caribbean does not disclose to the Court that this old case was decided a decade before the comments to Rule 4.1-9 were substantially amended. Plus, ***the same adjuster was not disqualified*** in *Royal Caribbean Cruises, Ltd. v. Buenaagua,* 685 So. 2d 8 (Fla. 3d DCA 1996) which contained the following prophetic quote which is applicable here:

> RCCL's affidavits merely related what every lawyer already knows: Jones Act cases are all similar. This is a basic principle of our jurisprudential system. All patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, negligence and immigration cases, and all cases of any singular type share elements in common.

The five new affidavits are conclusory and add no relevant facts at all. The defense lawyers prepared these intentionally vague affidavits to try and disqualify Aronson by speculation and innuendo.

### Knowledge Obtained by a Prudent Lawyer Cannot Form a Basis to Disqualify Counsel

Under the comments to Rule 4-1.9 (b), information should be considered generally known if it typically would be obtained by "any reasonably prudent lawyer who had never represented the

former client."

Defendant has advanced the novel "play book" theory of disqualification. [D.E. 17, p. 5], Faso declaration ¶8.  Prior to this case neither Aronson, nor Walker, who has litigated against the cruise line for over 10 years, has ever heard of, this supposed "play book."  Aronson Affidavit [D.E. 28-1 - ¶8(a)]; Walker Affidavit [D.E. 34 - ¶26 and 42].  In fact, this play book does not exist.  It is nothing more than Defendant's attempts to conflate its general and widely known corporate policies and procedures into "confidential" or  "proprietary information."

As set forth in Walker's affidavit, these policies and procedures have been published in the media[9]; discussed at Congressional hearings;[10] discussed on social media networks and blogs;[11] produced in response to discovery requests and court orders;[12] and repeatedly revealed in conversation's with Defendant's own in-house lawyers.[13]  Walker Affidavit [D.E. 34 - ¶57].  Indeed, the allegedly "confidential" information that Defendant advances as proprietary is widely known to the local plaintiff's bar, and in particular to Walker.  Walker Affidavit [D.E. 34 - ¶64].  No only would  prudent lawyers obtain this information, they already have long ago.

Any information allegedly known by Aronson is precisely the type of information recognized

---

[9] http://www2.cruising.org/industry/medical_facilities.cfm

[10] December 2005-House, March 2006-House, March 2007-House, September 2007-House, June 08-Senate

[11] http://www.cruiselawnews.com/tags/royal-caribbean

[12] For example, in the Chambers v. Royal Caribbean case in state court where Royal Caribbean is seeking disqualification, the cruise line produced the SQM regarding the crew medical procedures on the cruise ship and ashore.

[13] Walker Affidavit [D.E. 34 - ¶57].

under the Rule 4-1.9(b) as "generally known."  The information is <u>both</u> general knowledge of an organizational clients policies and practices <u>and</u> it is widely known.

This case is squarely on point with <u>Akrey v. Kindred Nursing Centers</u>, 837 So. 2d 1142 (Fla. 2d DCA 2003) where the owner of a nursing home (Vencor) sought to disqualify a plaintiff's law firm after an associate (DiStasio) who had previously defended the nursing home joined the plaintiff's law firm. [14]  The court noted that the case would turn on whether the present action was a "substantially related matter" to other cases and whether "DiStasio had not only received protected client confidences but also that the confidential information was material to this matter."  <u>Id</u>. 1144 (internal quotes and ellipses omitted).  The court quashed the lower court order of disqualification concluding that Vencor had failed to meet its burden of proof.  The court was not persuaded by Vencor's assertion that during the course of representing Vencor in twenty-five law suits, DiStasio had "learned confidential litigation and settlement strategies, as well as other confidential corporate information."[15]  <u>Id</u>. 1145.

Nor was the court persuaded by the fact that DiStasio had moderated a panel discussion in a seminar sponsored by Vencor for outside counsel entitled "Discovery Issues: Defending Against Production of all Personnel Files and All Resident Records."  <u>Id</u>. 1145.  The court refused to consider a "bald assertion" that the case against Vencor involved "subject matter identical to Mr. DiStasio's former representation of Vencor."  <u>Id</u>.  Relying on <u>Royal Caribbean v. Buenaagua</u>, 685 So. 2d 8, 11 (Fla. 3d DCA 1996), the court held that Vencor had failed to meet its burden of proof

---

[14] The <u>Akrey</u> case was decided before the 2006 amendments to the rules.  At that time, the rules provided for a more expansive standard for disqualification.

[15] The court noted that these allegations were made in unsworn testimony by Vencor's attorneys.

"it is a basic principle of our jurisprudential system that all patent cases are similar; all bankruptcy cases are similar;  indeed, all eviction, negligence and immigration cases, and all cases of singular type share elements in common."  Id.  See Bon-Secours-Maria Manor v. Seaman, 959 So. 2d 774 (Fla. 2d DCA 2007)(relying on Akrey to conclude that defendant had failed to meet its burden of proof in showing that disqualification of attorney law firm was warranted in the same action).

### Conclusion

"Disqualification of a party's counsel is an extraordinary remedy and should be resorted to sparingly."  Kaplan v. Divosta Homes, 20 So. 3d 459, 461 (Fla. 2d DCA 2009) citing Vick v. Bailey, 777 So. 2d 1005, 1007 (Fla. 2d DCA 2000).  Disqualification should not be used for tactical purposes.

Defendant has now twice failed to demonstrate a basis for disqualifying Aronson, much less Walker.  The vague and conclusory Faso declaration, referring to matters outside of his knowledge and before his employment with Defendant, are factually inaccurate and misleading. The four new crew claims adjuster affidavits are equally vague and inapplicable to this passenger case.  But even if the declaration and affidavits were  assumed to true, the general facts alleged are insufficient under Rule 4-1.9 to require disqualification of Aronson, much less Walker.  Defendant's Motion should be denied.

Dated: September 3, 2010                              Respectfully submitted,

Miami, Florida                                       /s/ James M. Walker_____
                                                     James M. Walker
                                                     Florida Bar No. 755990
                                                     WALKER & O'NEILL, P.A.
                                                     Attorneys for Plaintiffs
                                                     Plaza 57, Suite 430
                                                     7301 S.W. 57th Court

South Miami, Florida 33143
Tel. No.        (305) 995-5300
Facsimile:      (305) 995-5310
jwalker@cruiselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2010, I certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List via email and regular mail.

/s/ James M. Walker
James M. Walker (FBN 755990)

-18-

### SERVICE LIST

Scott P. Mebane, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: smebane@mletrial.com**

Robert Michael Klein
*Counsel for Movant*
Stephens Lynn Klein. P.L.
9130 S. Dadeland Blvd, Penthouse I & II
Miami FL 33156
Telephone: (305) 670-3700
Facsimile: (305) 670-8592
**Email: KleinR@stephenslynn.com**

James M. Walker, Esq.
*Counsel for the Plaintiff*
Walker & O'Neill, P.A.
7301 S.W. 57th Court, Suite 430
South Miami, Florida 33143
Telephone: (305) 995-5300
Facsimile:   (305) 995-5310
**Email: jwalker@cruiselaw.com**

Jonathan Aronson, Esq.
*Co-Counsel for the Plaintiff*
Aronson Law Firm
P.O. Box 565130
Miami, Florida 33256
Telephone: (305) 665-8626
Facsimile: (305) 665-3429
**Email: jaronson@aronsonlawfirm.com**

Curtis J. Mase, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: cmase@mletrial.com**

Valentina M. Tejera, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: vtejera@mletrial.com**

Sterling A. McMahan, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: smcmahan@mletrial.com**