UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 10-21650-CIV-MORENO/TORRES

CHARLENE I. JOHNSON,

       Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.
a Liberian Corporation,

       Defendant.

_____/

## DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF DISQUALIFICATION

     Defendant, ROYAL CARIBBEAN CRUISES, LTD. (RCL), by and through undersigned counsel, hereby files its Consolidated Reply[1] in Support of its First Amended Motion for Disqualification.

     As an initial matter, this Court should know that Magistrate Judge O'Sullivan issued an Order in *Hernandez v. Royal Caribbean Cruises Ltd.*, Case No. 10-21636 (Sept. 7, 2010), that denied RCL's motion to disqualify Aronson and Walker.  In essence, the Order finds that disqualification is not warranted under Florida Bar Rule of Professional Conduct 4-1.9 because RCL failed to prove that Aronson previously represented RCL in a case substantially related to Hernandez's case – i.e., because RCL did not show that Aronson's prior work for it involved "the subject stair case or the Flo Rider surfing activity" that was the subject of Hernandez's suit.

---

[1] This consolidated reply is filed in opposition to two separate Responses filed by Plaintiff's counsel, DE 56 and DE 58.  RCL requests that this Court accept this filing that exceeds the 10 page limit for a reply where this filing is a consolidated reply to two responses.  Plaintiff's counsel objects to this request despite having filed two responses to RCL's motion to disqualify.  Also, RCL respectfully requests that this Court hold a hearing on its First Amended Motion to Disqualify to allow the parties to present oral argument on the issues contained in the motion.

**MASE LARA EVERSOLE, P.A.**

CASE NO.: 10-21650-CIV-MORENO/TORRES

*See Hernandez*, Case No. 10-21636, 12 (Sept. 7, 2010).  However, the Order in *Hernandez* misapplies the law for two reasons.  The first is that the Order improperly imported Rule 4-1.9(a)'s "substantially related" standard into Rule 4-1.9(b).  Rule 4-1.9(a) and (b) are disjunctive such that each is subject to a separate analysis and, as a result, "an attorney may be disqualified from representing a client under *either* provision."  *FMC Technologies, Inc. v. Edwards*, 420 F. Supp.2d 1153, 1158 (W.D. Wash. 2006) (emphasis added).  Each subsection addresses distinct reasons for disqualification.  Reading "substantially related" into subsection (b) renders meaningless that statutory provision.

In addition, the Order misapplied *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630 (Fla. 1991), when it found that RCL failed to disclose the pertinent confidential information it sought to protect in order to establish its reasons for disqualification.  *See Hernandez v. Royal Caribbean Cruises Ltd*., Case No. 10-21636, 13 n.4.  As discussed in more detail below, the Florida Supreme Court has expressly rejected the need for such particularized proof recognizing that such information is protected.  *See State Farm Mut. Auto. Ins. Co.,* 575 So.2d at 633-34.  Disclosing the information to establish disqualification would undermine the very purpose of seeking disqualification in the first place.  As such, "[a] former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter" [and] "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services."  *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519 at *5, *citing Health Care and Retirement Corp. v. Bradley*, 944 So.2d 508, 512 (Fla. 4th DCA 2006).

**MASE LARA EVERSOLE, P.A.**

CASE NO.: 10-21650-CIV-MORENO/TORRES

For the reasons set forth below, RCL respectfully requests that this Court apply Rule 4-1.9's subsections independently and without reading the provisions of one into the other.   In addition, RCL requests that this Court follow the law as stated in *State Farm* that does not require the disclosure of confidential information to prove the necessity of Aronson's disqualification.

**Florida Bar Rule of Professional Conduct 4-1.9 applies and requires Aronson's disqualification.**

**1.      Aronson and Walker's interpretation of Florida Bar Rule of Professional Conduct 4-1.9 is overly restrictive and narrow.**

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law."   *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.   The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Id*.   As recognized by the Supreme Court of the United States, "the lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out" and "to encourage clients to make full disclosure to their attorneys."   *Id*.   (citing *Trammel v. U.S.*, 445 U.S. 40, 51 (1980)).   The privilege applies whether the client is an individual or a corporation. *Id*.   (citing *Fisher v. U.S.*, 445 U.S. 391, 408 (1976)).

Rule 4-1.9, Rules Regulating the Florida Bar, recognizes an attorney's continuing duty to keep confidences learned as a result of a prior attorney-client relationship confidential.   Rule 4-1.9 provides:

3

**MASE LARA EVERSOLE, P.A.**

A lawyer who has formerly represented a client in a *matter* shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

(b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

(emphasis added). At issue is the scope of "matter" with respect to Aronson's prior representation. The narrow view of "matter" taken by Aronson and Walker ignores the basic notion that not all prior attorney-client representations are the same. For instance, Walker's one-time representation of a plaintiff is unlike Aronson's long-standing representation of RCL, a corporate client. Where a "matter" as to the plaintiff is narrow and limited to the facts of one case, a "matter" as to an institutional client is greater in scope and may include general advice given during the course of the relationship as a well as case specific representation.

The affidavit of one of RCL's in-house counsel, Salvatore Faso, explains the problem with Aronson now suing RCL. The other affidavits of several in-house adjusters amplify and crystallize the issue at hand. Aronson is far from just another defense counsel hired to defend discrete claims. Rather, Aronson in his decade of representation became one of RCL's closest advisors, being issued a vendor badge to ensure complete and easy access, and being present at RCL so often that many thought him an employee there. He freely mingled with lawyers and adjusters alike and had free reign of information of all types from all departments. He handled all types of cases and gave advice on a wide range of matters. This advice not only encompassed case specific advice, but also more generalized corporate legal advice pertaining to defense of

**MASE LARA EVERSOLE, P.A.**

claims, claims handling, strategy for payment of maintenance and cure[2], crew medical care, strategies for defending specific claims, strategies for responding to letters demanding maintenance and cure and medical care, educational seminars and training on a wide range of topics including strategies for passenger and crew case handling and expert selection. While the Florida Bar Rules of Professional Conduct generally focus upon the relationship between the information acquired, and the manner in which the attorney now seeks to switch sides in a case/fact specific manner, there is a point at which the length, nature and extent of representation in litigation and generally advising on litigation strategies, case management, etc., makes switching sides and suing the same company simply impermissible. The *Tuazon* case discussed below appears to be premised in part on this concept.

When Aronson was representing RCL, if he identified a safety problem or risk in connection with a specific case, he would indicate same in correspondence to the company [Aronson[3] at 21-24]. His identification of that risk was not necessarily case specific. Take for example the situation he described concerning a ship design defect. [Aronson at 30]. In handling a case, he became aware of a design defect on a ship. [Aronson at 31]. Clearly that problem would be endemic at the very least to the ship, perhaps to the class of ships and/or all RCL ships, though Aronson never researched or verified same. [Aronson at 33]. In that instance and many others, as Aronson handled specific cases he identified issues which in suing RCL place him at a profound tactical advantage, and place his new clients at a profound tactical advantage, all at the expense of the faith, trust and confidence RCL reposed in him because of the prior attorney-client relationship. Aronson - when asked in deposition - conceded in concept, that when he spoke to RCL employees at every level of the company during his ten years of

---

[2] The equivalent of food and lodging as required by general maritime law for crewmembers.
[3] "Aronson" refers to the August 26, 2010 Deposition of Jonathan Aronson filed with this Court, followed by the appropriate page number.

representation, those conversations occurred with their full knowledge and his encouragement to them that they were pursuant to the attorney-client privilege and would remain privileged and confidential.  [Aronson at 49, 51-53, 69, 91-93].

"Matter" for purposes of disqualification in this case – particularly under Rule 4-1.9(b) – involves much more than the same case or an identical prior case.  Aronson formerly represented RCL in a ten-year "matter" during which he learned RCL's inner-most secrets and procedures. For those reasons, and under the circumstances of this case, this Court must apply the reasoning in *Tuazon v. Royal Caribbean Cruises, Ltd*., 641 So.2d 417 (Fla. 3d DCA 1994), and reject the narrow analysis suggested by Plaintiff's counsel.

## 2.      Rule 4-1.9(b) requires Aronson's disqualification.

Rule 4-1.9(b) applies and requires Aronson's disqualification because he is in possession of confidential information he gained from his prior representation of RCL that is not generally known or discoverable and that will unfairly advance Plaintiff's case. Aronson argues that any confidential knowledge he possesses as a result of his prior representation is not related to this case, is generally known, and merely involves knowledge of RCL's general corporate practices. In support, Aronson's affidavit states that the passenger cases he handled for RCL most commonly involved routine personal injuries, such as slip and falls, that he never had "unfettered" access RCL's employees, that he does not have any confidential information or RCL secrets, and that "he does not ***believe*** that the positions" that he will raise in this or other matters will be any different "from those that would be raised by any competent legal counsel who had never represented Royal Caribbean."   [DE 56-1 at ¶¶ 6, 9, 10 (emphasis added)]. Aronson's assertions are contradicted by the affidavits filed by RCL in support of disqualification and Aronson's subsequent deposition, all of which establish that he has intimate

**MASE LARA EVERSOLE, P.A.**

knowledge of confidential matters that relate to this case and that will give Plaintiff an unfair advantage.

### a. Aronson's Ten Year Representation of RCL.

Aronson represented RCL from the late 1990's until he voluntarily resigned on September 21, 2009. [Aronson at 4, 18, 131]. At its height, RCL provided him with the primary source of revenue for his firm. [Aronson at 157-58]. Aronson had an RCL vendor badge which RCL only gives to those it absolutely trusts and which allowed him to enter RCL without having to sign-in at the front desk. [Aronson at 38, 46-47]. Aronson was regularly present in RCL's offices, had free access to RCL employees including its in-house lawyers and adjusters who would pull from their computers or files any information he requested – he had the complete trust of RCL's employees. [Aronson at 39-42, 47-52, 78-79]. Following his resignation, Aronson waited a mere eight months before he sued RCL. [Aronson at 135-139]. Aronson never sought consent or a waiver from RCL prior to suing RCL. [Aronson at 137].

The affidavits filed by RCL[4] show that Aronson counseled RCL about confidential safety issues aboard its ships, that he had access to RCL's self-critical safety analyses, that he had a vendor badge that allowed him access to RCL's premises and ships, that he prepared adjusters in anticipation of depositions involving crew and passenger claims, that he had access to the adjuster's files, including confidential information regarding RCL's internal valuation of claims, that he conducted in-house training, and that he was a central participant and advisor in developing RCL's strategies for keeping confidential information confidential. [*See* Affidavits of Wendy Zepernick, Amy Yarrow (amended), David Banciella, Michelle Perez and Stacy Stanley]. Those affidavits establish that as a result of the attorney-client relationship with RCL,

---

[4] *See* Affidavits of Salvatore Faso, Wendy Zepernick, Amy Yarrow (amended), David Banciella, Michelle Perez and Stacy Stanley filed in connection with RCL's First Amended Motion to Disqualify Plaintiff's Counsel [DE 45].

Aronson was privy to confidential information that is not generally known or discoverable. [Faso's Affidavit at ¶6, 7, 9].

Aronson testified inconsistently about the confidential information he has as a result of his prior representation.  On the one hand, Aronson admitted that he was privy to RCL's confidential information during his decade's long representation and that he may have such information in his "vapid cranium," but assured that he would not use any such legal theories or confidential knowledge in this case.  [Aronson at 79-80, 178-188].  On the other hand, Aronson stated that he knew "[n]othing more than anybody else would know who didn't represent [RCL] for 10 years plus", that what he learned during that time was not "any great secret", and that his knowledge is "stuff everybody knows."  [Aronson at 45, 171-172].  Viewed as a whole, however, Aronson's own testimony establishes two things: (1) that he is in possession of confidential information as a result of his prior representation of RCL and (2) that such confidential information relates to this case and will give him an unfair tactical advantage.

This case involves a passenger's claim of injuries while on a FlowRider onboard a ship. [DE 1].  In his general defense of RCL cases, Aronson regularly imparted information about RCL to experts to obtain their opinion.  [Aronson at 24-26, 28-30, 151-152].  Those experts submitted reports that discussed and evaluated safety issues aboard its ships.  [Aronson at 26]. Aronson had access to those expert reports and had conversations with RCL's employees about not using particular experts.  [Aronson at 26, 80].  Aronson's knowledge about which experts RCL prefers goes beyond just producing a list of experts that RCL has used.  [Faso[5] at 80-81, 83].  That knowledge is based, in part, on conversations he had with Faso and Hehir.  [Faso at

---

[5] "Faso" refers to the August 16, 2010 Deposition of Salvatore Faso filed with this Court, followed by the appropriate page number.

**MASE LARA EVERSOLE, P.A.**

83, 297].  RCL's preference of experts is not information that is obtainable by a reasonably prudent attorney.  [Faso at 80-81, 130-131].

In one instance, Aronson obtained a negative report from an expert.  [Aronson at 30]. Rather than continue with litigation, Aronson "used a little lawyering skill," pushed for mediation, and settled in order to keep the confidential expert opinion regarding a design flaw confidential.  [Aronson at 30-33].  Aronson testified that he did not determine whether this was a problem unique to the particular ship involved or to that class[6] of RCL ships.  [Aronson at 33]. Additionally, he did not attempt to determine whether the design flaw was endemic to all of RCL's ships.  [Aronson at 33].  Thus, Aronson knows of a potential problem, which he learned in defense of a case, which may or may not be endemic to all of RCL's ships.  [Aronson at 30-32] His suing RCL given this type of knowledge is fundamentally untenable in view of the attorney-client privilege.  Notably, Aronson testified that in addition to this specific instance "fleshed out" in his deposition, there were other instances when retained experts offered adverse opinions [Aronson at 30] and he took actions to protect and keep these secrets; [Aronson at 140-143] as with the design flaw instance, he did not determine whether these problems were limited to the particular ship, class wide or endemic to the entire fleet.  [Aronson at 33].  Irrespective, today information on such issues resides in his "vapid cranium" and whether Aronson wants to acknowledge it or not, his knowledge of "where the bodies are buried" renders it ethically improper for him to switch sides and sue RCL in similar types of cases only eight months after he quit as RCL's attorney.

In addition, in defending cases for RCL, Aronson obtained confidential information concerning a coordinated strategy for keeping confidential information confidential.  [Aronson at

---

[6] Class denominates a vessel type.

**MASE LARA EVERSOLE, P.A.**

58-60].   Aronson attended a meeting of outside counsel to discuss and coordinate strategy on how to assert and defend attorney-client and work product privileges on confidential information.   [Aronson at 57-60].   At the meeting, RCL's lawyers discussed coordination of assertion of the privileges in a manner to best retain the privileged character of the material. [Aronson at 58-59].   Aronson was privy to both the confidential information and the strategy for asserting the privileges.   He also learned RCL's confidential information when he investigated cases, spoke to witnesses and prepared them for depositions.   [Aronson at 148-150].

Further, Aronson himself successfully asserted the work-product and attorney-client privileges on RCL's behalf.   [Aronson at 139-146].   When successful, the information remained confidential, known only to RCL and Aronson.   Aronson attempted to testify that it has since lost its confidential character [Aronson at 141-142, 144-145], but that rings hollow in the face of common sense, and his other testimony.   Aronson waivered,[7] however, as to whether he believed that such confidential information is publicly known:   Aronson stated that all such confidential information is publicly known, but admitted also that he does not know whether the information is known in the public domain.   [Aronson at 139-147, 177].

Finally, Aronson has knowledge based on his prior discussions with and opinions to RCL concerning the value of its cases.   [Aronson at 83-88].   In so doing, he would obtain relevant information, including information pertaining to problem areas on a particular ship.   [Aronson at 92].   Aronson considers this information to be privileged.   [Aronson at 93].   Despite the

---

[7] To the extent Aronson claims he could not recall whether he was privy to certain privileged information, he fails to rebut Faso's testimony to the contrary. *See, e.g., Harvey v. City of Stuart*, 296 Fed. Appx. 824, 827 n.3 (11th Cir. 2008) (unreported) (accepting as true evidence contained in defendants' affidavits due to opposing party's failure to rebut same).   For instance, Aronson could not recall whether he ever asserted a privilege on behalf of RCL and instructed the witness not to answer the question.   [Aronson at 153].   Aronson could not recall whether he ever provided training to the crew medical area or on how to pay maintenance and cure.   [Aronson at 154].   Aronson could not recall whether he ever formulated opinions about institution-wide recurring problems during his representation of RCL.   [Aronson at 156-157, 169, 180].

**MASE LARA EVERSOLE, P.A.**

confidential nature of such information, however, Aronson opined that it is *probable* that all of that information is generally known.  [Aronson at 93-97].

### b.  The Facts of this Case Fall Squarely under *Tuazon*.

What is readily apparent is that Aronson's years of acquired knowledge is indeed largely confidential and not generally known in the public domain.  Also apparent is that his knowledge is deeper than mere knowledge of RCL's general corporate practices.   It is that knowledge that makes this case fall under the facts of *Tuazon v. Royal Caribbean Cruises, Ltd.*, 641 So.2d 417 (Fla. 3d DCA 1994), rather than *Morgan Stanley & Co., Inc. v. Solomon,* 2009 WL 413519 (S.D. Fla. 2009).  That Aronson was not RCL's employee is not dispositive of whether he had access to confidential information that will provide him with an improper advantage in this case. Further, and despite Aronson's contention to the contrary, *Tuazon* does not require that the prior representation be in the same case.

In *Tuazon*, the adjuster[8] "adjusted, evaluated, investigated and handled claims on behalf of the Defendant."  641 So.2d at 417 n.1.  Of concern in *Tuazon* was that "Plaintiff's attorney (in his capacity as adjuster) was and (in his capacity as attorney) is privy to the *confidential procedures and policies* of the Defendant."  *Id*. (emphasis added).  The Third District Court of Appeal held that such knowledge fell "squarely within the proscription of" Rule 4-1.9(b).  *Id*. The facts here also fall squarely within Rule 4-1.9(b).  In contrast, the attorney in *Morgan Stanley* worked on that company's matters for approximately two of five years' working as an associate for Greenberg Traurig.  *See Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519 at *1 (S.D. Fla. 2009).  During that time, the associate tried *two* arbitrations on behalf of the

---

[8] Magistrate Judge O'Sullivan's Order in *Hernandez* distinguishes *Tuazon* from this case because Aronson was not RCL's employee.  However, in *Tuazon* the adjuster was not employed by RCL, but was an agent who worked for an outside adjusting company.  Just like in *Tuazon*, Aronson was essentially an agent for RCL.  In any event, the employment status of former counsel is irrelevant; rather, it is the depth and type of knowledge possessed by former counsel that is pertinent to determining whether disqualification is appropriate.

**MASE LARA EVERSOLE, P.A.**

company, conducted discovery, used a database that ranked arbitrators, and became familiar with the company's compensation structure.  *See id.*  Apparently, before he became a plaintiff's attorney and sued Morgan Stanley there was a lag time of at least three years.  *See id.*

Aronson's argument that the facts of *Morgan Stanley* resemble those here is laughable. The associate in *Morgan Stanley* was "chained to his desk" at a large firm and worked on matters for that company for a mere two years.  The circumstances here are strikingly different in that Aronson was one of RCL's go-to lawyers for over a decade, handled hundreds of cases and gave general advice.

RCL relied extensively on Aronson as its counselor.  Before he resigned, Aronson had "unfettered access" to RCL which means that nothing was held back in any discussion with Aronson and that he had access to anything and everything.  [Faso[9] at 36-37].  Aronson gave legal advice to RCL's employees concerning how best to handle the cases or claims files.  [Faso at 67].  His advice was a big part of RCL's claims handling and adjusters relied upon him and his counsel.  [Faso at 68-69].  To this day, RCL employs the practices that he imparted over the course of his representation.  [Faso at 68-69].  Contrary to Aronson's and Walker's contentions, recent additions of in-house litigators have not changed the fundamentals of how cases are internally assessed.  [Faso at 286].  RCL's operational and safety challenges remain the same. [Faso at 286].  Certainly, these facts go far beyond those of the associate in *Morgan Stanley*.

As noted, in *Morgan Stanley* there was a three year lag time between the prior representation and the suit brought against it by the former associate.  The passage of time is an important factor in assessing disqualification.  *Royal Caribbean Cruises, Ltd. v. Buenaagua*, makes this point clear.  There the same adjuster who was disqualified in *Tuazon* was not

---

[9] Faso began working for RCL in January 2008.  [Faso 15-16].  His knowledge about Aronson is based on his review of company records, and from his dealings with his adjustors and other personnel who worked there during the years Aronson served as RCL's counselor.  [Faso at 26].

disqualified in *Buenaagua*, a case that was filed almost three (3) years after leaving his job as an adjuster.  *See* 685 So.2d 8, 9-10 (Fla. 3d DCA 1996).  Here, not even a year has passed since Aronson resigned as RCL's trusted counselor and advisor.

Beyond that, however, what is more difficult to quantify and what the *Tuazon* court recognized, is that where an attorney such as Aronson has provided such extensive advice to a company over such a lengthy period of time, has become so involved, integrated and engrained in a company's business, when he "switches sides" it becomes nearly impossible in the near term for him to avoid using information learned through the confidential relationship against the company.  The only effective way to prevent this from occurring is to permit the passage of time and to proscribe such representation where there exists the possibility of adverse use of privileged information to the detriment of the client.  Here, there is a substantial risk that Aronson will use the knowledge he gained during his prior representation of RCL to Plaintiff's advantage (and RCCL's disadvantage) in this case.

### c.  The Natural Conclusion from Aronson's Prior Representation of RCL is that he is in Possession of Material Confidential Information that will Unfairly Advance Plaintiff's Case.

Aronson's argument that disqualification is not warranted because RCL has not established that he has knowledge of *specific facts* that are substantially related to this case is wrong.  That argument both ignores the irrefutable presumption that confidences were disclosed to an attorney based on the prior attorney-client relationship and requires the waiver of the privilege to prove the need for protection.  The Supreme Court of Florida has expressly rejected the need for such particularized proof recognizing that such information is protected.  *See State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630, 633-34 (Fla. 1991).  As such, "[a] former client is not required to reveal the confidential information learned by the lawyer in order to

13

**MASE LARA EVERSOLE, P.A.**

establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.  A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519 at \*5, *citing Health Care and Retirement Corp. v. Bradley*, 944 So.2d 508, 512 (Fla. 4th DCA 2006).

Here, the only natural conclusion is that Aronson is in possession of information that he will use against RCL in this suit that alleges injuries as a result of an injury aboard one of RCL's ships.  Specifically, Plaintiff alleges that the accident occurred while on the FlowRider surfing activity  [DE 1, ¶ 9]. There is no dispute that Aronson did not work on a case involving a FlowRider for RCL.   The inquiry does not end there, however, because there are other confidential factors that go into the internal analysis of a case.  Aronson's own affidavit states that he routinely handled passenger cases for RCL.  In deposition he testified that he not only handled such matters, but learned information handling them generally, which remains confidential to this day.  [Aronson at 90-91].

In this regard, these types of cases are more like products liability cases because certain accidents tend to recur due to known problems or *procedures* on the ships.  *See, e.g., Sears, Roebuck & Co. v. Stansbury*, 374 So.2d 1051 (Fla. 5th DCA 1979).  Aronson, by virtue of his prior representation, is aware of "safety issues" and how RCL plans to keep such confidential information confidential.  To that end, Aronson has a substantial tactical advantage about confidential information including preferred experts, RCL's discovery strategy, and case valuation relating to injury cases occurring on its ships.  *See generally Contant v. Kawasaki Motors Corp. v. U.S.A., Inc.*, 826 F. Supp. 427 (M.D. Fla. 1993) (disqualifying attorney who was

**MASE LARA EVERSOLE, P.A.**

made privy to information he would not have received but for fact that the represented the defendant in a product liability action).

The cases cited by Aronson are inapposite on this point.  In *Kaplan v. Divosta Homes, L.P.*, disqualification was denied because the movants there could not establish the existence of a prior attorney-client relationship.  *See* 20 So.3d 459, 462-463 (Fla. 2d DCA 2009).  Further, in *Vestron, Inc. v. National Geographic Society*, 750 F. Supp. 586 (S.D.N.Y. 1990), the district court, interpreting New York's Code of Professional Responsibility, declined to disqualify a law firm finding that the confidential information imparted during the prior representation was not related to the current lawsuit – the current suit involved a breach of contract claim while the prior suit involved a trademark dispute.  750 F. Supp. at 594-95.  No such clear difference exists here. Likewise in *Akrey v. Kindred Nursing Centers*, 837 So.2d 1142 (Fla. 2d DCA 2003), a case cited by Walker, the Second District Court of Appeal reversed an order granting disqualification because the evidence filed there failed to establish the dates of representation, the types of claims defended, or the facilities involved. In this case, RCL has have presented evidence of all of these things.

Aronson's knowledge is sufficient to warrant disqualification in this case because of the potential undermining to RCL's defense.  An examination of Florida case law regarding disqualification based on *inadvertent* disclosure of privileged documents serves as guidance. *See, e.g., Atlas Air, Inc. v. Greenberg Traurig, P.A*., 997 So.2d 1117 (3d DCA 2008); *Abamar Housing & Development v. Lisa Daly Lady Décor, Inc*., 724 So.2d 572 (Fla. 3d DCA 1998).  In *Abamar*, the Third District Court of Appeal recognized the importance of choosing one's counsel, but nonetheless required disqualification as the prudent course of action.  The court did so reasoning that the "receipt of privileged documents is grounds for disqualification of the

CASE NO.: 10-21650-CIV-MORENO/TORRES

attorney receiving the documents based on the unfair tactical advantage such disclosure provides." The court explained that disqualification under those circumstances does not require that the movant "demonstrate specific prejudice," and that "[l]ike so many other ethical considerations in the practice of law, perceptions are of the utmost importance." *Id*. at 574, *citing Junger Utility & Paving Co., Inc. v. Myers*, 578 So.2d 1117, 1119 (Fla. 1st DCA 1989). "Thus, how much of an advantage, if any, one party may gain over another [cannot be measured, but] the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process." *Abamar Housing and Development, Inc.*, 724 So.2d at 574.

Though the cases concerning inadvertent document disclosure involve factual matters pertaining to the case at issue, the same reasoning as to the inability to measure a party's advantage applies. Aronson can neither disassociate himself from the knowledge he obtained nor guarantee that at some point during this litigation his confidential knowledge will not provide him with a tactical advantage. The mere possibility of such an advantage is sufficient to warrant disqualification. *See id*.; *see also Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So.2d 155 (Fla. 3d DCA 2005); *Cf., Kusch v. Ballard*, 645 So.2d 1035 (Fla. 4th DCA 1994); *see also Etan Mark, Inadvertent Document Productions and the Threat of Attorney Disqualification*, 83 Fla. B. J. Nov. 2009.

### 3. Florida Bar Rule of Professional Conduct 4-1.9(a) also applies and requires Aronson's disqualification because he will attack his own work in this case.

In seeking disqualification under Rule 4-1.9(a), RCL is not claiming that Aronson previously represented it in connection with this case.[10] Instead, RCL seeks his disqualification

---

[10] Contrary to Walker's claims of RCL's lack of candor with regard to the 2006 amendments to the comments to Rule 4-1.9, RCL has at all times set forth the current rule and comments.

**MASE LARA EVERSOLE, P.A.**

because of the potential overlap of material confidential knowledge he obtained during his prior representation of RCL.  Given Aronson's intimate knowledge of RCL including its strategy for keeping privileged information confidential, Aronson will know for what to ask and how to circumvent RCL's assertions of privilege.

Unlike *Morgan Stanley* where there was no evidence demonstrating that the attorney there would be attacking his own legal work (2009 WL 413519 at *4), there is such evidence here.  RCL prepared accident reports in anticipation of litigation that are privileged and are given to defense counsel.  [Faso at 53].  In connection with such, there exist privileged documents related to claims investigation and investigations of incidents onboard.  [Faso at 61].  Since Aronson had unfettered access to these, he was privy to the confidential information contained in those documents.  [Faso at 61-63].  More specifically, Aronson was exposed to reports that indicated the causes of recurring accidents.  [Aronson at 170].  As such, he became aware of safety issues aboard ships when dealing with specific cases and, in certain instances, he would report the problems to RCL.  [Aronson at 19-20, 22].

Further, Aronson gave general advice to RCL about cases that were not assigned to him. [Aronson at 103-104, 110-112].  He conducted meetings with adjustors about how to best handle their cases.  [Aronson at 56-57].  Aronson stated that he had his own strategy for defending a case and that he imparted that strategy of defense in his reports to RCL.  [Aronson at 119-121]. His strategies are still employed by RCL.  [Faso at 68-69, 92].

Here, there is an irrefutable presumption that RCL's confidences were disclosed to Aronson during his prior representation of RCL.  *See Health Care and Retirement Corp. of Am., Inc.*, 944 So.2d 508, 511 (Fla. 4th DCA 2006).  Further, the nature of Aronson's prior representation supports the conclusion that he is in possession of confidential information that is

**MASE LARA EVERSOLE, P.A.**

material to this case.  *See id*. at 512 (citing comments to Florida Bar Rule of Professional Conduct 4-1.9).  As previously indicated, Aronson handled many passenger cases filed against RCL, meaning that he obtained confidential information related thereto.  That confidential information is material to this case which involves a passenger claim he previously handled.

Aronson's reliance upon *Bradley v. Health Care and Retirement Corp. of Am., Inc.,* to argue that there is no overlap in material facts is inapposite.  *See* 961 So.2d 1071, 1072 (Fla. 4th DCA 2007).  The circumstances of that case do not approximate those here that involve more than a "hired gun" situation such as the associate's representation of the nursing home in *Bradley*.  Most important is the scope of Aronson's prior representation of RCL.  Unlike the attorney in *Morgan Stanley* who worked as a hired gun for two arbitrations during a two year period, Aronson was RCL's trusted counselor for more than a decade.  By virtue of representing RCL during that time he provided the company with wide-ranging advice regarding confidential matters relating to over 300 crewmember and passenger cases and generally.  The confidential information[11] he gained from the prior representation is material to the present case and the facts of this case are almost indistinguishable from those in *Tuazon*.  Despite his assurances, Aronson cannot guarantee that he will erase from his mind the confidences he received while representing RCL.  *See State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630, 634 (Fla. 1991).

By this motion to disqualify, RCL is not seeking to create a tactical impediment to the administration of justice.  To the contrary, RCL seeks to protect its interests and respectfully asks that this Court balance the competing policies – those that support the selection of one's counsel with those requiring the fair administration of justice and the protection of the judicial system's appearance of fairness – to find that disqualification is warranted under the facts and

---

[11] There is no playbook.  The reference of such in Salvatore Faso's affidavit was used as a figure of speech. [Faso at 112].  Further, RCL does not maintain a written list of preferred experts.  [Faso at 81-82].

MASE LARA EVERSOLE, P.A.

CASE NO.: 10-21650-CIV-MORENO/TORRES

circumstances of this case.  *See generally Bradley v. Health Care and Retirement Corp. of Am., Inc.*, 944 So.2d 513, 510 (Fla. 4th DCA 2006).[12]

## Conclusion

Based on the agreement and authorities cited above, Defendant submits Plaintiff's counsel must be disqualified.

Respectfully submitted,

MASE LARA EVERSOLE, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:  (305) 377-0080

By:     -s-Valentina M. Tejera
CURTIS J. MASE
Florida Bar No. 478083
cmase@mletrial.com
SCOTT P. MEBANE
Florida Bar No.: 273030
smebane@mletrial.com
VALENTINA M. TEJERA
Florida Bar No.: 536946
vtejera@mletrial.com

---

[12] RCL will not address Walker's imputed disqualification because that issue was not raised in Plaintiff's counsel's responses.  However, RCL is not abandoning that argument made in its motion to disqualify counsel.

19

**MASE LARA EVERSOLE, P.A.**

CASE NO.: 10-21650-CIV-MORENO/TORRES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of September, 2010, I filed this document electronically.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Valentina Tejera*
VALENTINA TEJERA

CASE NO.: 10-21650-CIV-MORENO/TORRES

<u>SERVICE LIST</u>
**CHARLENE I. JOHNSON v. ROYAL CARIBBEAN CRUISES, LTD.**
**CASE NO.: 10-21650-CIV-MORENO/TORRES**
**SOUTHERN DISTRICT COURT OF FLORIDA**
**MIAMI DIVISION**

James M. Walker, Esq.
*Co-Counsel for Plaintiff*
Walker & O'Neill, P.A.
7301 S.W. 57th Court, Suite 430
South Miami, FL  33143
Telephone:  (305) 995-5300
Facsimile:  (305) 995-5310
**Email: jwalker@cruiselaw.com**

Jonathan Aronson, Esq.
*Co-Counsel for Plaintiff*
Aronson Law Firm
P.O. Box 565130
Miami, FL  33256
Telephone:  (305) 665-8626
Facsimile:  (305) 665-3429
**Email: jaronson@aronsonlawfirm.com**

Robert Michael Klein
*Counsel for Movant*
Stephens Lynn Klein. P. L.
9130 S Dadeland Boulevard, Penthouse I & II
Miami, FL 33156
Telephone: (305) 670-3700
Facsimile: (305) 670-8592
**Email: KleinR@stephenslynn.com**

18115/149

**MASE LARA EVERSOLE, P.A.**