UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-21650-CIV-MORENO

CHARLENE I. JOHNSON,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

(CLOSED CIVIL CASE)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is a personal injury action against the cruise line arising out of an accident that occurred while Plaintiff was taking a private lesson on the FlowRider, a simulated surfing activity onboard the Defendant's cruise ship. Defendant argues that Plaintiff's suit is barred by her execution of a waiver which released Defendant from liability for any negligence or damages associated with Plaintiff's use of the FlowRider. Plaintiff contends that the waiver is void under 46 U.S.C. § 30509 and general maritime law, and in the alternative, that the waiver should not be enforced on equitable grounds. Both parties have moved for summary judgment. Because the simulated surfing activity is inherently dangerous and is not an essential function of a common carrier, the Court finds that the waiver is valid and enforceable, and accordingly, GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

### I. Background

On January 30, 2010, Plaintiff Charlene Johnson, a 35-year-old woman, departed on a seven-day cruise aboard the *M/S Oasis of the Seas* ("the vessel"), a cruise ship owned and operated by

Defendant Royal Caribbean Cruises, Ltd. On January 31, 2010 Plaintiff purchased a private lesson on the FlowRider. Passenger participation in the FlowRider is voluntary and requires payment of a fee that is separate and distinct from the cruise fare. Prior to using the FlowRider, passengers must sign an electronic Onboard Activity Waiver ("Waiver"), which is presented to passengers in color on an electronic screen. The Waiver is attached hereto as Exhibit "A." The Waiver states at the top in bold, "Express Assumption of Risk - Waiver & Release of Liability." The Waiver is three pages long and is designed so that passengers *must* scroll through all of its language before execution; otherwise it is simply impossible to execute the Waiver.

Plaintiff signed and executed the Waiver, thereby agreeing to "fully release and forever discharge" Defendant from "any and all actions" arising from "any accident [or] injury" in any way connected to Plaintiff's use of the FlowRider. The Waiver expressly warns passengers that the "rider/participant can, intentionally or inadvertently, move quickly and unexpectedly from side to side or any direction, which will necessarily result in falls [or wipeouts] from the bodyboard" and which may cause serious injury. The Waiver further provides that the passenger agrees not to use the FlowRider until she has watched a safety video. At the time of the alleged incident, the FlowRider safety video was in circulation on the stateroom channel, which is available to all passengers on their cabin TVs.[1]

Before her private lesson on the FlowRider, Plaintiff had observed others using the device, and throughout her lesson she had ridden the FlowRider and fallen off her board multiple times. Approximately forty minutes into her private lesson, Plaintiff was instructed to stand on the board,

---

[1] Barbara Cobas, one of the defense witnesses, initially testified in her deposition that the safety video was not in circulation on the vessel at the time of the alleged incident. Ms. Cobas subsequently discovered that she was mistaken and that the video was in fact in circulation. Defendant accordingly filed an errata sheet, which Plaintiff then moved to strike. The Court, finding sufficient justification for the change, has denied Plaintiff's motion.

and once Plaintiff was standing, the instructor let go of the board. Plaintiff immediately fell off the board and hit the back wall of the FlowRider, fracturing her right ankle. As a result, Plaintiff filed the instant negligence action against Defendant.

## II. Standard of Review

Summary judgment is authorized when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of the case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not simply rest upon mere allegations or denials of the pleadings; it must present more than a scintilla of evidence in support of its position. A jury must be able reasonably to find for the nonmovant. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* at 255.

## III. Discussion

The parties have not cited any case with facts similar to this one–where the injury resulted from a recreational and inherently dangerous activity on board a cruise ship, for which a waiver was executed. The core issue presented by the parties' Motions for Summary Judgment is the validity and enforceability of the Waiver. Plaintiff argues that the Waiver is void under 46 U.S.C. § 30509 and general maritime law, and in the alternative, that the Waiver should not be enforced on equitable grounds. Defendant argues that general maritime law does not apply under the facts of this case, and

even if it does, 46 U.S.C. § 30509 does not apply to invalidate the Waiver. Defendant also argues that equity does not prevent enforcement of the Waiver.

## A. Whether General Maritime Law Applies

At the outset, the Court notes that admiralty jurisdiction must exist before the Court may apply admiralty law. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004). Whether admiralty jurisdiction exists is an independent determination that must be made by the Court. *See id.* at 900. In order for admiralty jurisdiction to exist, two tests must be satisfied: the location test and the connection test. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) ("[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity."). The location test, requiring that the incident causing the alleged harm occurred in navigable waters, is plainly satisfied.

The connection test has two prongs, both of which must be met: (1) the incident causing the alleged harm must have a potentially disruptive impact on maritime commerce; and (2) the activity giving rise to the incident must bear a substantial relationship to traditional maritime activity. *See id.*; *Doe*, 394 F.3d at 900. The Court finds that neither prong of the connection test is met. While the cruise line industry is itself maritime commerce, it is unlikely that the cruise line industry would be disrupted by future FlowRider-related injuries, as falling off the board and injuring oneself is an inherent and unavoidable risk of using the FlowRider, an activity which is completely voluntary and must be purchased separately from the cruise fare. Even assuming, *arguendo*, that the first prong of the connection test is satisfied, the second prong is clearly not, as the FlowRider is a purely recreational activity that bears no relationship to traditional maritime activities such as navigation, piloting, and shipping. *See Foster v. Peddicord*, 826 F.2d 1370, 1376 (4th Cir. 1987) ("[T]his case is about swimming and diving . . . . It is not about piloting, shipping, or navigational error, or other

aspects of traditional maritime activity. There is simply no predicative relationship upon which an otherwise typical tort claim may properly be described as relating to 'matters with which admiralty is basically concerned.'") (quoting *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 270 (1972)). Therefore, because neither prong of the connection test is satisfied, Federal admiralty jurisdiction is not invoked and general maritime law does not apply.

## B. Whether 46 U.S.C. § 30509 Applies

Even assuming, however, that admiralty jurisdiction exists and general maritime law applies, 46 U.S.C. § 30509–the statute under which Plaintiff challenges the Waiver–is inapplicable here. 46 U.S.C. § 30509, formerly cited as 46 U.S.C. § 183(c), reads in pertinent part as follows:

(a) Prohibition.--

(1) In general.--The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting--

(A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or

(B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.

(2) Voidness.--A provision described in paragraph (1) is void.

Plaintiff argues that the Waiver in this case is void under § 30509 because it attempts to absolve Defendant from its own negligence in the operation, design, maintenance, and supervision of the FlowRider. This argument, however, ignores the policy rationale behind the statute, which is that common carriers should not be able to secure immunity from liability for their own negligence in providing *transportation* and other *essential functions* of common carriers. See *Chervy v. Peninsular & Oriental Steam Navigation. Co.*, 243 F. Supp. 654, 655 (S.D. Cal. 1964) ("[T]he

provisions of Title [46 U.S.C. § 30509] . . . were intended to apply as between common carrier and passengers."); *Weade v. Dichmann, Wright & Pugh*, 337 U.S. 801, 807 (1949) ("The duty of a common carrier . . . is to transport for hire whoever employs it."); *Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 441 (1889) ("[T]he law does not allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions which are unreasonable and improper, amounting to an abnegation of the essential duties of his employment."); *Shultz v. Florida Keys Dive Ctr, Inc.*, 224 F.3d 1269, 1271 (11th Cir. 2000) ("Congress enacted [§ 30509] . . . to put a stop to practices like providing [exculpatory clauses] on the reverse side of steamship tickets.") (internal quotations omitted); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1292 (9th Cir. 1997) ("[A]dmiralty law has generally prohibited carriers from limiting their liability for transporting passengers from ship to shore."); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336 (11th Cir. 1984) (relying on § 30509 in holding that the provision of an adequate sanitary system on a cruise ship is an "essential function" for which a sea carrier cannot disclaim responsibility).

While courts have expanded the essential functions of a ship as common carrier to include the provision of "comfortable accommodations" to passengers, *see id.* at 1334, recreational and inherently dangerous activities such as the FlowRider can hardly be considered essential functions of a common carrier, nor are they at all related to a carrier's duty to provide safe transportation to its passengers. Plaintiff has cited to no case suggesting otherwise.

On the other hand, Defendant has cited to two scuba diving cases which, though not directly on point, are particularly illustrative. In *Shultz*, 224 F.3d at 1269, a widower sued a dive center for the wrongful death of his wife, who died of an apparent drowning while scuba diving on a trip conducted by the dive center. *Id.* at 1270. The district court granted summary judgment for the dive center on the basis of a liability release signed by the decedent which the court determined to be valid

under 46 U.S.C. § 30509. The Eleventh Circuit, after examining the legislative history of § 30509, affirmed, finding that the statute did not cover the release. In particular, the court stated:

> Congress enacted [§ 30509] . . . to 'put a stop to' practices like 'providing on the reverse side of steamship tickets that in the event of damage or injury caused by the negligence or fault of the owner or his servants, the liability of the owner shall be limited.' That 'practice' that Congress intended to outlaw was much different than the practice here-requiring a signed liability release to participate in the recreational and inherently risky activity of scuba diving.

*Id.* at 1271 (internal quotations omitted).

In *Borden v. Phillips*, 752 So. 2d 69 (Fla. 1st DCA 2000), a decedent's personal representative sued the defendant boat owner and operator for the wrongful death of the decedent, who died while participating in an advanced scuba diving course taught by the defendant. Prior to participating in the course, the decedent had signed a waiver releasing the defendant from liability for injuries related to the decedent's participation in the course. The court held that although 46 U.S.C. § 30509 applied to the dive boat's voyage because it was a vessel engaged in passenger transportation, *id.* at 72, the waiver was not void under § 30509, as the alleged negligence was related solely to the activity of scuba diving and the decedent's death had no relationship to the defendant's operation or maintenance of the vessel, *id.* at 73.

While both *Shultz* and *Borden* are distinguishable in several respects, as neither involved an injury on board a cruise ship, the Court nonetheless finds their reasoning persuasive and wholly applicable to the instant case. The FlowRider, like scuba diving, is a recreational and inherently dangerous activity. The alleged negligence here is related solely to the FlowRider, and Plaintiff's injury stems entirely from her use of the FlowRider and has no relationship to the operation or navigation of the cruise ship. The Waiver does not attempt to limit Defendant's liability associated with its duty to provide safe transport or any other essential functions, but applies solely to limit

Defendant's liability associated with Plaintiff's use of the FlowRider, a recreational and inherently dangerous activity that Defendant would simply not be able to offer its passengers otherwise.

Moreover, courts have upheld waivers releasing land-based operators from liability for similarly inherently dangerous activities. *See In re. Compl. of Royal Caribbean Cruises, Ltd.*, 403 F. Supp. 2d 1168 (S.D. Fla. 2005) (jet-skiing); *Waggoner v. Nags Head Water Sports, Inc.*, 141 F.3d 1162 (4th Cir. 1998) (same); *Theis v. J & J Racing Promotions*, 571 So. 2d 92 (Fla. 2d DCA 1990) (race car driving). To declare void an otherwise valid waiver simply because the complained-of injury occurred on board a cruise ship, even though the activity giving rise to the injury was totally unrelated to the ship's duty to provide safe transport or other essential functions, defies both the legislative history of § 30509 as well as common sense. Accordingly, the Court finds that 46 U.S.C. § 30509 does not apply to invalidate the Waiver here.

### C. Whether the Waiver is Valid on Equitable Grounds

Finally, the Court rejects Plaintiff's argument that the Waiver should not be enforced on equitable grounds. The Waiver clearly and unambiguously released Defendant from liability for any negligence or damages associated with Plaintiff's use of the FlowRider. The bolded language at the top of the first page of the Waiver conspicuously indicated the nature and purpose of the document, and the second page of the Waiver specifically explained the potential risks associated with using the FlowRider. Furthermore, Plaintiff had observed others using the FlowRider, and had ridden the FlowRider and fallen off her board multiple times throughout her private lesson before injuring herself, so she clearly knew or should have known that she could fall and consequently injure herself while using the FlowRider. That Plaintiff was not provided a hard copy of the Waiver is irrelevant, as the Waiver is only three pages long and Plaintiff had to scroll through its entire language in order to execute her full signature on the third and final page. Moreover, it is Defendant's policy not to

provide a hard copy of the Waiver to any of its passengers. Finally, while Plaintiff asserts she thought she was signing for a room charge when executing the Waiver, this mistaken belief is solely the result of her own failure to read the contractual language clearly presented to her, for which the law of equity provides no remedy.

### IV. Conclusion

The Court finds the Waiver here–limited to the inherently dangerous simulated surfing activity–to be valid and enforceable. Because Plaintiff's execution of the Waiver released the cruise line from liability for any negligence or damages associated with Plaintiff's use of the FlowRider, Plaintiff's suit for negligence is barred. Accordingly, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment (**D.E. 93**), filed on **January 28, 2011**, is GRANTED. Further, it is

**ADJUDGED** that Plaintiff's Motion for Summary Judgment (**D.E. 90**), filed on **January 28, 2011**, is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of March, 2011.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record